## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PREMIUM TRANSPORTATION SERVICES, INC., | ) | Case No. 16-10629 (KJC) |
| d/b/a Total Transportation Services, | ) | |
| | ) | |
| Debtor[1] | ) | |
| | ) | |

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS UNDER SECTIONS 105, 345, 363, 364, AND 503(B) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 6003 AND 6004 AND LOCAL RULE 2015-2 AUTHORIZING (I) MAINTENANCE OF EXISTING BANK ACCOUNTS; (II) CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM; (III) CONTINUED USE OF EXISTING BUSINESS FORMS AND RECORDS;  (IV) WAIVING THE REQUIREMENTS OF SECTION 345(B) OF THE BANKRUPTCY CODE ON AN INTERIM BASIS; (V) CONTINUATION OF INTERCOMPANY  TRANSACTIONS AND ACCORDING ADMINISTRATIVE EXPENSE STATUS TO CLAIMS FOR SUCH TRANSACTIONS AND (VI) RELATED RELIEF**

The above-captioned debtor and debtor in possession (the "Debtor") hereby moves (the "Motion") for entry of interim and final orders, the interim form of which is attached hereto as **Exhibit B**, pursuant to sections 105, 345, 363, 364, and 503(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2015-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") (i) authorizing the  Debtor's maintenance of existing bank accounts; (ii) authorizing the Debtor's continued use of its existing cash management system; (iii) authorizing the Debtor's continued use of its existing business forms; (iv) waiving the requirements of section 345(b) of the Bankruptcy Code on an interim basis, (v) authorizing the continuation of intercompany transactions postpetition and according administrative expense

---

[1]     The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: Premium Transportation Services, Inc. (3417).  The Debtor's corporate headquarters is located at 18735 South Ferris Place Rancho Dominguez, California 90220.

status to claims for postpetition intercompany transactions; and (vi) granting related relief.  In support of the Motion, the Debtor relies upon and incorporates by reference the *Declaration of Sam Joumblat In Support of First Day Motions* (the "First Day Declaration"),[2] which was filed with the Court concurrently herewith.  In further support of the Motion, the Debtor respectfully states as follows:

**JURISDICTION**

1.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of this proceeding and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The Debtor consents pursuant to Local Rule 9013-l(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      The statutory bases for the relief requested herein are sections 105, 345, 363, 364, and 503(b), as supplemented by Bankruptcy Rules 6003 and 6004 and Local Rule 2015-2.

**BACKGROUND**

4.      On March 13, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the

---

[2]      Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

Bankruptcy Code.   No trustee, examiner or statutory committee has been appointed in this chapter 11 case.

5.      The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the *First Day Declaration*, incorporated herein by reference.

A.      **The Debtor's Bank Accounts and Existing Cash Management System**

6.      The basic structure of the cash management system (the "Cash Management System") described herein constitutes the Debtor's ordinary, usual, and essential business practices.   The Debtor's Cash Management System is similar to those commonly employed by corporate enterprises comparable to the Debtor in size and complexity.   A flowchart generally outlining the Debtor's Cash Management System is attached hereto as **Exhibit A**.

7.      Prior to the commencement of this Chapter 11 Case, the Debtor maintained, in the ordinary course of business, two bank accounts (collectively, the "Bank Accounts") at California United Bank (the "Cash Management Bank").   In particular, the Debtor maintains an operating account (the "Operating Account") and a lockbox account (the "Lock Box Account").   The flow chart at **Exhibit A** also includes redacted account numbers.   The Debtor does not maintain any investment accounts.

8.      Under the Cash Management System, the Debtor collects and concentrates the funds generated by the Debtor's operations to fund disbursements to its vendors, suppliers, employees and other creditors incurred in the operation of the Debtor's businesses.   The Cash Management System uses Microsoft Dynamics GP, which is a general ledger system that tracks account balances and transfers.   In particular, the Debtor's finance and accounting employees use such platforms to accurately maintain and track the Debtor's cash and ensure payment of its

obligations.  The movement of funds through the Cash Management System is described in detail below.

**B.**    **Cash Management System**

9.      The majority of the Debtor's customers make payments to the Debtor by Automatic Clearing House (ACH) and Electronic Data Interchange (EDI).  Other customers send paper checks to an address that the Cash Management Bank uses to collect the checks, process them, and post to the Debtor's Lock Box Account.  The Debtor receives funds from its customers on a daily basis.

10.      Disbursements made by the Debtor fall into five general categories: (i) payments made to vendors, suppliers and service providers, (ii) payments made to employees and independent owner operators, (iii) rental payments on facilities the Debtor leases or rents, (iv) lease payments on tractors and other equipment used by the Debtor to operate its business and (v) payments to marine terminals and shipping lines for demurrage charged on containers that exceed the free time allowed by the ports' tariff.   All five types of disbursements are subject to the Debtor's institutional controls.

11.      With respect to disbursements to vendors, suppliers and service providers, the Debtor has instituted a multi-step review and approval process to ensure that expenditures of the Debtor's funds are appropriately authorized.  In particular, invoices from vendors, suppliers and service providers are received by the Debtor at various locations.  Once received, invoices are reviewed and approved by the General Manager of the respective location and sent to the Debtor's finance department for a second level review by the Controller.  After an invoice is reviewed by the Debtor's finance department, it is entered into the Debtor's Microsoft Dynamics GP platform.  On a weekly basis, the Debtor generates a check report of all scheduled payments.

This report is reviewed by the Debtor's Controller and Chief Financial Officer.  Only after this report is approved does the Debtor cut checks or issue ACH transfers.[3]  Only the Chief Financial Officer, the Chief Operations Officer and the Vice President of Operations are permitted to authorize the Cash Management Bank to electronically make payments, whether by check or ACH transfer.  All paper checks are on the Cash Management Bank's Safepay system where the amount and payee information are transmitted to the Cash Management Bank for matching.

12.     These checks or ACH transfers are issued from the Operating Account.  The Lockbox Account is a zero balance account used only to collect accounts receivable.  The Lockbox Account is swept each night up to the Operating Account.  The Debtor also receives and funds certain amounts for its affiliate, Eco Flow Transportation, LLC ("Eco Flow") through the Operating Account to Eco Flow's Operating Account.  As further described below, these transactions are journaled for Eco Flow.  The Debtor also occasionally transfers tax related payments to or from the Operating Account from an account held by its parent, Saybrook Logistics Acquisition, LLC.

13.     The Debtor funds payroll and other employment-related expenses for Traffic Sales Consulting, Inc. ("TSC"), which employs the majority of the Debtor's corporate-level employees.  The Debtor funds these amounts from the Operating Account to an operating account held by TSC.  TSC uses a third-party payment administrator, ADP, Inc. ("ADP"), to administer all of its payroll and employment-related expenses.  ADP debits TSC's account for payroll payments and employee benefit payments.  ADP then disburses such funds from its own accounts to the employees, taxing authorities, and other applicable third parties.

---

[3]     While the vast majority of the Debtor's disbursements are funded by check or ACH transfer, on occasion the Debtor makes disbursements by wire transfer.

14.     With respect to payroll for the employees housed at the Debtor, the Debtor uses a third-party payment administrator, Avitus Group ("Avitus"), to administer all of its payroll and employment-related expenses for company drivers.  Avitus debits the Operating Account for employee drivers' payroll and benefit expenses.  Avitus disburses such funds from its own accounts to the Debtor's employees, taxing authorities, and other applicable third parties.

15.     A Flexible Spending Account ("FSA") for employees is maintained by ADP for TSC employees.

### C.     Cash Management Fees

16.     In the ordinary course of business, the Debtor incurs fees charged by the Cash Management Bank for administering the Bank Accounts and certain credit card processing fees (collectively, the "Cash Management Fees").  The administration of the Bank Accounts is a critical aspect of the Cash Management System, and any cessation of these services due to the Debtor's inability to pay the Cash Management Fees would be extremely disruptive to the Cash Management System and the Debtor's business overall.  As the Cash Management Fees are automatically debited from the Bank Accounts by the Cash Management Bank, if there were any outstanding Cash Management Fees on the Petition Date, the amount of such outstanding fees would be *de minimis*.  By this Motion, the Debtor requests authority from the Court to pay and honor Cash Management Fees incurred in the ordinary course of the Debtor's business.

17.     The Debtor maintains current and accurate accounting records of daily cash transactions and submits that maintenance of this Cash Management System will prevent undue disruption to the Debtor's business operations while protecting the Debtor's cash for the benefit of its estate.

18.     During the course of the Chapter 11 Case, the Debtor may make changes to its Cash Management System and/or amend a Cash Management Bank's existing controls over the Bank Accounts that are in place.

**D.      Existing Business Forms and Records**

19.     In the ordinary course of the Debtor's business, the Debtor uses a variety of checks, business letterhead, purchase orders, invoices, envelopes and other business forms and correspondence (collectively, the "Business Forms").  Because the Business Forms were used prepetition, they do not reference the Debtor's current status as a debtor in possession.  To minimize expense to the estate, the Debtor requests authority to continue to use all existing Business Forms without reference to its "debtor in possession" status.  By virtue of the nature and scope of the Debtor's business operations, it is vital that the Debtor be permitted to continue to use the existing Business Forms without alterations or change.  If new Business Forms are ordered, such Business Forms will include the legend "debtor in possession" with the corresponding bankruptcy case number.  As with the existing Cash Management System, requiring the Debtor to change existing Business Forms would unnecessarily distract the Debtor from its restructuring efforts and impose needless expenses on the estate.

20.     In the ordinary course of its businesses, the Debtor maintains certain books and records in connection with the operations of its businesses (collectively, the "Books and Records").  Continuing to use the Books and Records subsequent to the Petition Date rather than closing those and opening new books will enable the Debtor to avoid unnecessary cost and burden.

**E.      The Debtor's Bank Accounts and Cash Management Bank**

21.     The Debtor may have daily Bank Account balances in excess of $250,000.00.  As such and to the extent necessary, the Debtor seeks a waiver on an interim basis of the deposit

guidelines set forth in section 345(b) of the Bankruptcy Code in order to continue its prepetition practices, without prejudice to the Debtor's ability to seek a further interim or final waiver.

**F.      Intercompany Transactions**

22.      In connection with the ordinary course of the Debtor's business, the Debtor engages in transactions with its affiliates that form an integral part of such entities' operations (collectively, the "Intercompany Transactions").   Before the filing of this case, the Debtor engaged in Intercompany Transactions, including, but not limited to, (i) paying expenses on behalf of non-debtor affiliates (for example, payment of employee expenses, vendors, legal fees, and insurance), and (ii) receiving payments for a non-debtor affiliate.   These expenses and payments are then allocated to the affiliates within the Debtor's accounting systems.  The Debtor charges one of its affiliates, Eco Flow, a 3% fee on received revenue.

23.      Occasionally these transactions create intercompany balances, which are accounted for through book entries on the Books and Records.  The Cash Management System, in conjunction with the Debtor's accounting systems, allows for accurate tracking and tracing of such Intercompany Transactions.

24.      The Debtor proposes to continue and maintain its intercompany procedures and practices, in accordance with its ordinary course prepetition practice.  As with prepetition accounts generally, all prepetition intercompany balances will be "frozen" as of the Petition Date, except for any prepetition intercompany obligations that the Debtor may be authorized to pay pursuant to an Order of this Court.  Therefore, to the extent there was a prepetition Intercompany Transaction in the ordinary course of the Debtor's business for which an affiliate is owed money, such affiliate would have a prepetition intercompany claim against the Debtor. To the extent an affiliate makes a payment on one of the Debtor's behalf with respect to a

postpetition obligation or there is an Intercompany Transaction in the ordinary course of the Debtor's business for which an affiliate is owed money, such affiliate would be afforded an administrative claim against the Debtor, pursuant to sections 364(b) and 503(b)(1) of the Bankruptcy Code (collectively, "Postpetition Intercompany Claims").

25.     If Postpetition Intercompany Claims are accorded such priority status, each entity utilizing funds flowing through the Cash Management System will continue to bear ultimate repayment responsibility for such borrowings.  Maintaining the Debtor's current procedures for accounting for Intercompany Transactions is warranted in the Chapter 11 Case.

26.     Accordingly, the Debtor requests authority to continue its prepetition practices with respect to Intercompany Transactions, subject to applicable provisions of any postpetition financing or cash collateral agreement or order, and further, to accord administrative expense status to obligations arising out of Postpetition Intercompany Claims, subject only to (a) liens and claims granted to the Debtor's senior secured lenders as adequate protection for use of cash collateral, and (b) any other claims granted administrative expense status pursuant to orders of this Court.

## RELIEF REQUESTED

27.     By this Motion, the Debtor seeks, pursuant to sections 105, 345, 363, 364 and 503(b) of the Bankruptcy Code: (i) authorization to maintain its Bank Accounts; (ii) authorization to continue use of its Cash Management System; (iii) authorization to continue use of its existing Business Forms and Books and Records; (iv) waiver of the requirements of section 345(b) of the Bankruptcy Code on an interim basis; (v) authorization to continue Intercompany Transactions postpetition and according administrative expense status to Postpetition Intercompany Claims; and (vi) any related relief the Court deems just and proper.

**BASIS FOR RELIEF**

A.    **Maintenance of Existing Bank Accounts**

28.    The *Region 3 Operating Guidelines and Reporting Requirements for Chapter 11 Debtor and Trustees* (the "Guidelines") set forth a requirement that chapter 11 debtors in possession open new bank accounts and close all existing accounts.  The Guidelines also require that the new bank accounts only be opened at certain financial institutions designated as authorized depositories by the United States Trustee.  The Local Rules, however, provide that a debtor may, upon motion and without notice and a hearing, use its existing checks without the debtor in possession designation and continue to use its existing bank accounts.  *See* Del. Bankr. L.R. 2015-2.

29.    The Debtor seeks a waiver of the Guidelines that require the Debtor to close the Bank Accounts and new postpetition bank accounts at approved depositories.  As described in detail above, the open Bank Accounts are part of an established and complete cash management system that the Debtor needs to maintain in order to ensure smooth collections and disbursements in the ordinary course of its business operations. Therefore, to avoid delays in paying debts incurred postpetition, and to ensure as smooth a transition into chapter 11 as possible, the Debtor should be permitted to continue to maintain the existing Bank Accounts. Otherwise, transferring the Bank Accounts will be disruptive, time consuming and expensive. Additionally, certain of the banking institutions at which the Bank Accounts are maintained are among those approved by the United States Trustee.

30.    The Debtor also requests authority to open and close bank accounts (subject to the provisions of any cash collateral order) in the ordinary course of business.  The Debtor requests that the Cash Management Bank be authorized to honor the Debtor's requests to open or close any bank accounts in the ordinary course of business.  Any new account that the Debtor opens

will be (i) with a bank that is (a) organized under the laws of the United States of America or any state therein and (b) has executed, or is willing to immediately execute, a Uniform Depository Agreement with the United States Trustee; and (ii) designated a "Debtor in Possession" account by the relevant bank. Additionally, the Debtor will provide the United States Trustee with notice of any new accounts that are opened.

31.    Courts in this District routinely waive the account-closing requirement and permit debtors, without prior hearing and notice, to use its existing bank accounts. *See e.g., In re Ormet Corp.,* Case No. 13-10334 (MFW) (Bankr. D. Del. Feb. 27, 2013); *In re Vertis Holdings, Inc.,* Case No. 12-12821 (CSS) (Bankr. D. Del. Nov. 1, 2012); and *In re Tri-Valley Corp.,* Case No. 12-12291 (MFW) (Bankr. D. Del. Aug. 9, 2012).

32.    The Debtor requests that the Bank Accounts be deemed debtor in possession accounts and that the Court authorize the Debtor to maintain and continue the use of these accounts in the same manner and with the same account numbers, styles, and document forms as those employed prior to the Petition Date.

33.    Both as part of this Motion and in other motions that have been concurrently filed, the Debtor is requesting authority to pay certain prepetition obligations. With respect to some of these obligations, the Debtor issued checks prior to the Petition Date that have yet to clear the banking system. In other instances, the Debtor will create the relevant check once the Court enters an order permitting the Debtor to do so. The Debtor intends to inform the Cash Management Bank which such checks should be so honored. Therefore, the Debtor requests that the Cash Management Bank be authorized to rely on the representations of the Debtor with respect to whether any check or other payment order drawn or issued by the Debtor prior to the Petition Date should be honored.

34.    The Debtor also requests that no Cash Management Bank that honors a prepetition check, wire, ACH transfer or other item drawn on any account that is the subject of this Motion (a) at the direction of the Debtor, (b) in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as a result of an innocent mistake made despite implementation of reasonable item handling procedures, be deemed to be liable to the Debtor, its estate, or otherwise on account of such prepetition check or other item being honored postpetition. The Debtor believes that such flexibility accorded the Cash Management Bank is necessary in order to induce the Cash Management Bank to continue providing cash management services without additional credit exposure.

### B.    Continued Use of Existing Cash Management System

35.    A centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992). The Third Circuit has held that a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient." *Official Comm. of Unsecured Creditors v. Columbia Gas Transmission Corp.*, 997 F.2d 1039, 1061 (3d Cir. 1993).

36.    The operation of the Debtor's business requires that the existing Cash Management System continue during the pendency of the Chapter 11 Case. If the Debtor is not permitted to continue to utilize its Cash Management System in its current form, its operations would be severely impaired.

37.    This Court has granted relief similar to that requested in this Motion. *See, e.g., In re Nebraska Book Co., Inc.*, Case No. 11-12005 (PJW) (Bankr. D. Del. June 28, 2011); *In re Los Angeles Dodgers LLC*, Case No. 11-12010 (KG) (Bankr. D. Del. June 28, 2011); and *In re Javo Beverage Co., Inc.*, Case No. 11-10212 (BLS) (Bankr. D. Del. Jan. 25, 2011).

38.     Accordingly, the Court should authorize the Debtor's continued use of its existing Cash Management System as modified pursuant to the proposed orders approving this Motion.

### C.     Continued Use of Existing Business Forms

39.     Local Rule 2015-2(a) states that a debtor in possession who uses pre-printed checks may, upon motion, without notice and hearing, be permitted to use these checks without requiring the debtor to designate "debtor in possession" on the checks.  To minimize expense to the estate, the Debtor request authority to continue to use all Business Forms existing immediately before the Petition Date, without reference to its debtor in possession status, unless and until new Business Forms are ordered during the pendency of the Chapter 11 Case.

40.     Changing correspondence and business forms would be unnecessary and burdensome to the estate, as well as expensive and disruptive to the Debtor's business operations.  For this reason, the Debtor requests that it be authorized to use its respective business forms and check stock without placing the label "debtor in possession" on each such check or form.[4]

41.     For these same reasons, courts in this district authorize debtors to continue the use of their business forms and checks in this manner.  *See, e.g., In re Nebraska Book Co., Inc.*, Case No. 11-12005 (PJW) (Bankr. D. Del. June 28, 2011); *In re Los Angeles Dodgers LLC*, Case No. 11-12010 (KG) (Bankr. D. Del. June 28, 2011); and *In re Javo Beverage Co., Inc.*, Case No. 11-10212 (BLS) (Bankr. D. Del. Jan. 25, 2011).

### D.     Waiver of Section 345(b) Requirements

42.     By this Motion, the Debtor requests that the Court enter an order waiving, for a period of sixty days from the Petition Date, the requirements of section 345(b) of the Bankruptcy

---

[4]     If at any point after the Petition Date the Debtor need to order new Business Forms, the Debtor will ensure such Business Forms comply with Local Rule 2015-2(a) and will include the title "debtor in possession" as well as the Debtor's bankruptcy case number.

Code with respect to the Bank Accounts, solely to the extent that any of the Bank Accounts are determined not to be in compliance with section 345(b) of the Bankruptcy Code.  During that interim period, the Debtor will discuss with the United States Trustee potential arrangements to adequately protect estate funds, to the extent the United States Trustee determines that such arrangements are required.  Regardless of whether such Bank Accounts are strictly compliant with the requirements of section 345(b) of the Bankruptcy Code, the Debtor believe that all funds in its Bank Accounts are secure, and obtaining bonds to secure such funds is unnecessary and would be detrimental to the Debtor's estate.  A bond secured by the undertaking of a corporate surety would be prohibitively expensive, and would divert funds needed for the Debtor's operations.

43.    There is ample cause to grant a temporary waiver of the deposit, investment and reporting requirements because the Debtor maintains the Bank Accounts with reputable, nationally recognized banking institutions, and because the size of the Debtor's business operations, the complexity of the Cash Management System and the costs associated with meeting the requirements of section 345(b) of the Bankruptcy Code make satisfying such requirements immediately after the Petition Date impracticable.  *See, e.g. In re Service Merchandise*, 240 B.R. 894 (M.D. Tenn. 1999).

44.    The Debtor's deposits in the Bank Accounts are commercially reasonable, appropriate and consistent with the intent of section 345(b) of the Bankruptcy Code.  As the Bank Accounts are maintained at an established, well-capitalized banking institution, the funds will not be sufficiently at risk at such depositories to necessitate strict adherence to the requirements of section 345(b) of the Bankruptcy Code and the Guidelines (to the extent such Bank Accounts are not already compliant with such requirements).  Moreover, if granted a

temporary waiver, the Debtor would not be required to deploy limited estate resources to open new accounts in the crucial first weeks after the Petition Date.

45.     Local Rule 2015-2(b) provides that no waiver of "section 345 shall be granted without notice and an opportunity for hearing in accordance with these Local Rules."  Local Rule 2015-2(b).  Nevertheless, Local Rule 2015-2(b) further provides that "if a motion for such waiver is filed on the first day of a chapter 11 case in which there are more than 200 creditors, the Court may grant an interim waiver until a hearing on the debtor's motion can be held."

46.     As this Motion has been filed on the first day of the Debtor's Chapter 11 Case and the Debtor has in excess of 200 creditors, the Debtor submits that a temporary waiver of the requirements of section 345(b) of the Bankruptcy Code is appropriate under the Local Rules.

### E.     The Court Should Authorize the Debtor to Continue the Intercompany Transactions in the Ordinary Course of Business and Postpetition Intercompany Claims Should be Treated as Administrative Expenses Pursuant to Sections 364(b) and 503(b)(1) of the Bankruptcy Code

47.     Although the Debtor believes that engaging in Intercompany Transactions on a postpetition basis would be within the ordinary course of its businesses, out of an abundance of caution, the Debtor is seeking the relief requested herein pursuant to section 363(b) of the Bankruptcy Code.  Section 363(b)(1) provides, in part, "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

48.     Section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to use property of the estate other than in the ordinary course of business after notice and a hearing. Courts have held that there must be some articulated business justification for using, selling or leasing property out of the ordinary course of business before the bankruptcy judge may order such disposition under section 363(b). *See, e.g., The Dai-Ici Kangyo Bank Ltd. v. Montgomery*

*Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate . . . courts require the debtor to show that a sound business purpose justifies such actions"). In the event an order permitting the Debtor to continue engaging in the Intercompany Transactions is necessary, the Debtor believes that its business judgment to continue the Intercompany Transactions is sound because, among other reasons discussed herein, the Intercompany Transactions are integral to the Debtor's daily operations. Thus, the Debtor submits that continuation of the Intercompany Transactions is in the best interests of the Debtor's estate and its creditors.

49.     To ensure that the Debtor will not, at the expense of its creditors, fund the operation of an affiliated entity, the Debtor respectfully requests that the Court, pursuant to sections 364(b) and 503(b)(1) of the Bankruptcy Code, authorize the Debtor to treat all Postpetition Intercompany Claims in the ordinary course of business as administrative expenses, subject only to (a) liens and claims granted to the Debtor's prepetition secured lenders as adequate protection for the use of cash collateral, and (b) other claims granted administrative expense status pursuant to orders of this Court.  If the Court authorizes the Debtor to treat Postpetition Intercompany Claims as administrative expenses, then each entity receiving goods or services through the intercompany arrangements should continue to bear ultimate repayment responsibility for such ordinary course transactions.

50.     Courts have granted such authority in other cases for similar reasons.  *See, e.g., In re Satelites Mexicanos, S.A. de C.V.*, Case No. 11-11035 (CSS) (Bankr. D. Del. Apr. 11, 2011) (granting administrative priority status to intercompany transactions); *In re Ambassadors International, Inc.*, Case No. 11-11002 (KG) (Bankr. D. Del. Apr. 5, 2011) (same); and *In re Spheris Inc.*, Case No. 10-10352 (KG) (Bankr. D. Del. Feb. 4, 2010) (same).

F.      **Waiver of Stay Under Bankruptcy Rule 6004(h) is Appropriate**

51.     By this Motion, the Debtor seeks a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  As set forth above, the immediate continued use of the Cash Management System, Bank Accounts and Business Forms is essential to prevent potentially irreparable damage to the Debtor's operations, value, and ability to reorganize.  Accordingly, the Debtor submits that ample cause exists to justify a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

G.      **Immediate Relief is Necessary to Avoid Immediate and Irreparable Harm**

52.     Further, to the extent that Bankruptcy Rule 6003(b) applies, the Debtor submits that the relief requested by this Motion is necessary to avoid immediate and irreparable harm for the reasons set forth above and the Court may grant the relief requested herein.

**NOTICE**

53.     Notice of the hearing on this Motion has been given to: (a) the creditors listed on the Debtor's list of thirty largest unsecured creditors, as filed with the Debtor's chapter 11 petition; (b) counsel for the Debtor's prepetition senior secured lenders, including the Cash Management Bank, and (c) the United States Trustee for the District of Delaware.  As this Motion is seeking first day relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m).  The Debtor respectfully submits that no further notice of this Motion is required.

17

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter interim and final orders, the interim form of which is attached hereto as **Exhibit B**, (i) authorizing the Debtor to maintain the Bank Accounts; (ii) authorizing the Debtor to continue to employ its existing Cash Management System; (iii) authorizing the Debtor to continue to use its existing Business Forms without reference to its debtor in possession status; (iv) waiving the requirements of section 345(b) of the Bankruptcy Code on an interim basis; (v) authorizing the continuation of Intercompany Transactions postpetition and according administrative expense status to claims for Postpetition Intercompany Transactions, and (vi) granting such other and further relief as the Court deems appropriate.

Dated: March 14, 2016
      Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL, LLP

*/s/ Tamara K. Minott*
Robert J. Dehney (No. 3578)
Erin R. Fay (No. 5268)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
rdehney@mnat.com
efay@mnat.com
tminott@mnat.com

*Proposed Attorneys for Debtor and Debtor-in Possession*

9910190.3

18