# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| PREMIUM TRANSPORTATION SERVICES, INC., ) | Case No. 16-10629 (KJC) |
| d/b/a Total Transportation Services ) | |
| ) | |
| Debtor[1] ) | |
| ) | |

### PREMIUM TRANSPORTATION SERVICES, INC.'S MOTION FOR INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 361 AND 363: (I) AUTHORIZING USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) SCHEDULING FURTHER INTERIM HEARING, AND (IV) GRANTING RELATED RELIEF

Premium Transportation Services, Inc., d/b/a Total Transportation Services, the above-captioned debtor and debtor-in-possession (the "Debtor") files this motion (the "Motion") for entry of an order pursuant to sections 361 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code") authorizing the Debtor's use of money that may represent "cash collateral" (to the extent such money is "cash collateral" as defined in section 363(a) of the Bankruptcy Code, the "Cash Collateral") of California United Bank (the "Prepetition Senior Lender") and TTSI Financing, LLC (the "Prepetition Junior Lender," and together with the Prepetition Senior Lender, the "Prepetition Secured Lenders") and granting adequate protection therefor. In support of the Motion, the Debtor relies upon and incorporates by reference the *Declaration of Sam Joumblat in Support of First Day Relief* (the "First Day Declaration"),[2] which was filed with the Court concurrently herewith. In

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: Premium Transportation Services, Inc. (3417). The Debtor's corporate headquarters is located at 18735 South Ferris Place, Rancho Dominguez, California 90220.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

further support of the Motion, the Debtor, by and through its undersigned proposed counsel, respectfully states as follows:

## RELIEF REQUESTED

1.      Pursuant to sections 105, 361, 362, 363 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtor requests the entry of an interim order (the "Interim Order"): (i) authorizing its use of the Prepetition Secured Lenders' Cash Collateral, on an interim basis, as described in more detail below (a copy of the proposed Interim Order is annexed hereto as **Exhibit 1**) and (ii) scheduling a further interim hearing ("Interim Hearing") to consider the Debtor's use of the Prepetition Secured Lenders' Cash Collateral following the Termination Date (as defined below) and the entry of a final order authorizing the use of any Cash Collateral on a permanent basis as will be set forth in a subsequently proposed order ("Final Order").

## BANKRUPTCY RULE 4001 AND LOCAL RULE 4001-2 CONCISE STATEMENTS

2.      Pursuant to Bankruptcy Rule 4001(d) and Local Rule 4001-2, the Debtor submits the following concise statement of the material terms of the Interim Order:[3]

---

[3]     Any summary of the terms of the Interim contained in this Motion is qualified in its entirety by reference to the provisions of the Interim Order. To the extent the Motion and the Interim Order are inconsistent, the Interim Order shall control. The Debtor reserves the right to supplement the statements made pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2 herein.

| Summary of Material Terms | | Location |
|---|---|---|
| **Parties with an Interest in Cash Collateral** Bankruptcy Rule 4001(b)(1)(B)(i) | The Prepetition Secured Lenders | Interim Order, Page 1 |
| **Purposes for Use of Cash Collateral** Bankruptcy Rule 4001(b)(1)(B)(ii) | In accordance with the terms and conditions set forth in the Interim Order, the Debtor proposes to use Cash Collateral, wherever such Cash Collateral may be located, to among other things, (a) maintain its operations consistent with prepetition practices as set forth in the Cash Management Motion, (b) pay certain prepetition obligations as further described in the Debtor's "first day" motions filed substantially contemporaneously herewith and authorized pursuant to the "first day" orders approving the same, and (c) pay disbursements for operating expenses in accordance with the Budget (as defined below), with a permitted variance of five percent (5%) per expense line item. | Interim Order, ¶ 2. |
| **Budget** Bankruptcy Rule 4001(b)(1)(B)(ii) | A two-week budget (the "Budget") setting forth the Debtor's projected receipts and disbursements for such period is attached as Exhibit A to the Interim Order.  The Budget may be modified with the prior written consent of the Prepetition Secured Lenders, without further order of the Court. | Interim Order, Page 1. |
| **Termination Date** Bankruptcy Rule 4001(b)(1)(B)(iii) | The Debtor's authority to use Cash Collateral pursuant to the Interim Order shall terminate (the date of any such termination, the "Termination Date") on the earlier to occur of (a) the date on which either Prepetition Secured Lender provides notice (via email, facsimile, or courier) to the Debtor's counsel and counsel of the other Prepetition Secured Lender of the occurrence of an Event of Default (as defined below) and (b) April 6, 2016.<br><br>An "Event of Default" shall mean:<br>• The violation by the Debtor of any terms of the Interim Order;<br>• The entry of an order converting the chapter 11 case to a case under chapter 7 of the Bankruptcy Code or terminating the authority of the Debtor to operate its business;<br>• The termination, expiration, lapse, or reduction of insurance coverage that is continuing on the Replacement Lien Collateral (as defined below) for any reason whatsoever;<br>• The Debtor's failure to pay, when due, any postpetition taxes; and<br>• The appointment of a trustee in the chapter 11 case. | Interim Order, ¶¶ 2, 11. |
| **Adequate Protection** Bankruptcy Rule 4001(b)(1)(B)(iv) | The adequate protection provided to the Prepetition Secured Lenders includes:<br>• Replacement Liens upon all property of the Debtor (excluding any avoidance actions under chapter 5 of the Bankruptcy Code) and all products, proceeds, rents, issues and profits thereof (collectively, the "Replacement Lien Collateral"). The Replacement Liens are in addition to, and with the same relative priority as the Prepetition Secured Lenders' liens and security interests on the Petition Date (the "Prepetition Liens") and shall secure the amount by which the value of the applicable Prepetition Secured Lender's interest in its collateral decreases as a result of the use of Cash Collateral or the imposition of the automatic stay in the chapter 11 case.<br>• Covenants to (a) maintain and keep the Replacement Lien Collateral in good condition, repair and working order (normal wear and tear excepted); and (b) maintain all insurance that existed as of the Petition Date with respect to the Debtor's business, the Prepetition Collateral and the Replacement Lien Collateral.<br>• If and to the extent the adequate protection of the interests of Prepetition Senior Lender in the Prepetition Collateral proves | Interim Order, ¶¶ 4, 5, 6. |

3

| | | |
|---|---|---|
| | insufficient, the Prepetition Senior Lender will have an allowed claim under Bankruptcy Code § 507(b) in the amount of any such insufficiency, with priority over the claims of any other party in interest under Bankruptcy Code § 507(b) (the "Senior 507(b) Claim"). If and to the extent the adequate protection of the interests of Prepetition Junior Lender in the Prepetition Collateral proves insufficient, the Prepetition Junior Lender will have an allowed claim under Bankruptcy Code § 507(b) in the amount of any such insufficiency, with priority over the claims of any other party in interest under Bankruptcy Code § 507(b) except the Senior 507(b) Claims, which will be senior to the 507(b) claims of the Prepetition Junior Lender. | |
| **Carve-Out** Bankruptcy Rule 4001(b)(1)(B)(iii) | The Interim Order provides a "Carve Out" of certain allowed professional fees of the Debtor and any statutory committee of creditors (a "Committee") appointed in the chapter 11 case pursuant to section 1103 of the Bankruptcy Code, all as detailed in the Interim Order. | Interim Order, ¶ 12. |
| **Local Rule 4001-2 Concise Statements** | | **Location** |
| **Cross-Collateralization** Local Rule 4001-2(a)(i)(A) | The Interim Order does not provide for cross-collateralization, other than replacement liens as adequate protection. | N/A |
| **Stipulations** Local Rule 4001-2(a)(i)(B) | None. | N/A |
| **Effect of Stipulations** Local Rule 4001-2(a)(i)(C) | None. | N/A |
| **Section 506(c) Waiver** Local Rule 4001-2(a)(i)(C) | None. | N/A |
| **Liens on Chapter 5 Causes of Action** Local Rule 4001-2(a)(i)(D) | The Interim Order does not provide for liens on avoidance actions under chapter 5 of the Bankruptcy Code ("Avoidance Actions"). | Interim Order, ¶ 4. |
| **Provisions Deeming Prepetition Debt to be Post-Petition Debt** Local Rule 4001-2(a)(i)(E) | The Interim Order does not deem prepetition secured debt to be post-petition debt or use post-petition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt. | N/A |
| **Disparate Treatment of Professionals Under Carve Out** Local Rule 4001-2(a)(i)(F) | The Interim Order contains no provisions for disparate treatment for professionals retained by the Committee, if any, with respect to the Carve Out. | Interim Order, ¶ 12. |
| **Non-Consensual Priming Liens** Local Rule 4001-2(a)(i)(G) | The Interim Order does not provide for non-consensual priming of any existing secured lien. | N/A |

4

| Section 552(b)(1) Waiver Local Rule 4001-2(a)(i)(H) | None. | N/A |
|---|---|---|

## JURISDICTION

3. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The Debtor consents pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

### A. Chapter 11 Filings

5. On March 13, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or statutory committee has been appointed in this chapter 11 case.

6. The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration, filed contemporaneously herewith and incorporated herein by reference.

7. Contemporaneously herewith, the Debtor has filed the *Debtor's Motion for Interim and Final Orders Under Sections 105, 345, 363, 364, and 503(b) of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004 and Local Rule 2015-2 Authorizing (I) Maintenance of Existing Bank Accounts; (II) Continued Use of Existing Cash Management System; (III) Continued Use of Existing Business Forms and Records (IV) Waiving the Requirements of Section 345(b) of the Bankruptcy Code on an Interim Basis; (V) Continuation of Intercompany Transactions and According Administrative Expense Status to Claims for Such Transactions and (VI) Related Relief* (the "Cash Management Motion").

**B.     The Debtor's Prepetition Secured Indebtedness**

8. The Note and Junior Security Agreement: The Debtor is party to that certain Second Amended and Restated Promissory Note, by and among Debtor (as successor by merger to Total Transportation Services, Inc. ("TTSI")) and Prepetition Junior Lender, dated as of October 3, 2011 and restated July 15, 2014 in the principal amount of $17,850,000.00 (the "Note").  The Note matures on October 3, 2017.  As of the Petition Date, there is approximately $24,000,000.00 in principal and interest outstanding under the Note. The Note is secured by substantially all of the assets (the "Junior Prepetition Collateral") of the Debtor as more fully described in that certain Security Agreement (the "Junior Security Agreement"), dated October 3, 2011, by and among Debtor (as successor by merger to TTSI) and Prepetition Junior Lender (the Note, Junior Security Agreement and other related documents are collectively the "Junior Prepetition Documents").   All indebtedness or obligations under the Junior Prepetition Documents as of the Petition Date, including, without limitation, all principal under the Note, and all fees, costs, interest, and expenses as and when due and payable pursuant to the Junior Prepetition Documents are referred to herein as the "Junior Prepetition Debt."

9. <u>The Revolving Credit Agreement, Assignment, Guarantee and Senior Security Agreement</u>: The Debtor has guaranteed the obligations of Saybrook Logistics Acquisition, LLC ("<u>Parent</u>") under an asset-based $4,000,000.00 revolving credit facility pursuant to (a) that certain Credit Agreement dated May 12, 2014 (as amended or modified, the "<u>Credit Agreement</u>") by and among Parent, the Prepetition Senior Lender and Debtor; (b) that certain Assignment and Assumption Agreement, Amendment and Waiver, dated March 1, 2016 (the "<u>Assignment</u>"), by and among Parent, Prepetition Senior Lender and Debtor; and (c) that certain Continuing Guarantee, dated March 1, 2016 (the "<u>Guarantee</u>") by and among Debtor and Prepetition Senior Lender. The obligations of the Debtor under the Guarantee are secured by substantially all of the assets of the Debtor, excluding the Debtor's truck fleet (the "<u>Senior Prepetition Collateral</u>," and together with the Junior Prepetition Collateral, the "<u>Prepetition Collateral</u>"), as more fully described in the Third Party Security Agreement dated as of March 1, 2016 (the "<u>Senior Security Agreement</u>") by and among Debtor and the Prepetition Senior Lender (the Credit Agreement, Assignment Agreement, Guarantee, Senior Security Agreement and other related documents are collectively the "<u>Senior Prepetition Documents</u>," and together with the Junior Prepetition Documents are the "<u>Prepetition Documents</u>"). The Assignment extended the maturity date of the Credit Agreement to June 15, 2017. As of the Petition Date, there is approximately $2,000,000.00 in principal outstanding under Credit Agreement.

10. All indebtedness or obligations under the Senior Prepetition Documents and the Assignment and Assumption Agreement as of the Petition Date, including, without limitation, all principal under the Credit Agreement, and all fees, costs,

7

interest, and expenses as and when due and payable pursuant to the Senior Prepetition Documents are referred to herein as the "Senior Prepetition Debt."

### C. Risk of Irreparable Harm and Need for Immediate Relief

11. The orderly continuation of the Debtor's operations and the preservation of its going concern value is largely dependent upon its ability to regularly convert Prepetition Collateral into Cash Collateral and use it to support the Debtor's business operations. Among other things, Cash Collateral will be used to fund the Debtor's payments to vendors and employees and to satisfy ordinary costs of operation, including rent, taxes and insurance. Without the liquidity provided by use of Cash Collateral, the Debtor's objective of restructuring its business as a going concern, while maintaining the value of the assets for the benefit of its creditors, will fail without a fair opportunity to achieve the purposes of the chapter 11 process. As set forth in the First Day Declaration, absent authority to use Cash Collateral, the Debtor, its creditors and estate generally will suffer irreparable harm because the Debtor would immediately cease operations, which, in turn, would cause an immediate and pronounced deterioration in the value of the Debtor's business. Thus, the Debtor's access to Cash Collateral is absolutely necessary to preserve and maximize value for the benefit of all of the Debtor's stakeholders.

12. As further set forth herein, the Interim Order provides adequate protection in the form of superpriority claims and adequate protection liens to protect the Prepetition Secured Lenders against any diminution in value arising from the Debtor's use of Cash Collateral or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code. The Debtor further proposes to make disbursements pursuant to a budget annexed to the Interim Order as Exhibit A (the "Budget"), subject to permitted variances.

13. Access to existing Cash Collateral on an interim basis will provide the Debtor with the liquidity necessary to ensure that the Debtor has sufficient working capital and liquidity to operate its business and thus preserve and maintain the going concern value of the Debtor's estate. Without such access to liquidity, the Debtor's ability to navigate through the chapter 11 process will be jeopardized, to the detriment of the Prepetition Secured Parties and all of the estate's other stakeholders. As a result, the Debtor has an immediate need to use Cash Collateral to ensure sufficient liquidity throughout the pendency of this Chapter 11 Case.

14. As demonstrated by the two-week budget, the Debtor has sufficient cash on hand and projected cash flow to continue all business operations without an immediate need for additional financing beyond use of Cash Collateral. The budget contains line items for each category of cash flows anticipated to be received or disbursed during the time period for which the budget is prepared. The Debtor believes that the budget includes all reasonable, necessary, and foreseeable expenses to be incurred in connection with the operation of its business for the period set forth in the budget.

## BASIS FOR RELIEF REQUESTED

**A.    Section 363(c)(2) of the Bankruptcy Code Authorizes the Debtor's Use of Cash Collateral**

15. Section 363 of the Bankruptcy Code governs the Debtors' use of cash collateral. Under section 363(c)(2), a debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes the use, sale or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Section 363(a) defines "cash collateral" as follows:

9

> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a). Section 363(e) of the Bankruptcy Code further provides that "on request of an entity that has an interest in property . . . to be used, sold or leased, by the trustee, the court . . . shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

16. It is universally acknowledged that a debtor's cash "is the life's blood of the business," and the bankruptcy court must ensure that such life's blood "is available for use, even if to a limited extent." *In re Mickler*, 9 B.R. 121, 123 (Bankr. M.D. Fla. 1981). Courts typically authorize a debtor to use cash collateral to continue its operations so long as the interests asserted by affected creditors in such cash are adequately protected. Thus, courts are required to balance the protection a debtor seeks to provide with the debtor's need to use cash in its reorganization effort. *Stein v. U.S. Farmers Home Admin. (In re Stein)*, 19 B.R. 458, 459 (Bankr. E.D. Pa. 1982). In ruling whether a lender is adequately protected early in a case, courts "will generally permit the business operation to continue, at least to the point of plan formulation, if the debtors make a solid evidentiary showing to support their projections[.]" *In re Dynaco Corp.*, 162 B.R. 389, 395 (Bankr. D.N.H. 1993).

17. Consistent with these requirements, courts repeatedly have recognized that use of cash collateral is appropriate where necessary to preserve a debtor's ability to

reorganize and thus maximize the value of an estate for all interested parties. *See, e.g.*, *Dynaco*, 162 B.R. at 394 (granting a motion for the use of cash collateral and stating that "the purpose of Chapter 11 is to rehabilitate debtors and generally access to cash collateral is necessary in order to operate a business"); *Chrysler Credit Corp. v. George Ruggiere Chrysler-Plymouth, Inc. (George Ruggiere Chrysler-Plymouth, Inc.)*, 727 F.2d 1017, 1020 (11th Cir. 1984) (allowing debtor to use cash collateral over secured creditor's objection after noting that "[w]ithout the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated."); *MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1399 (10th Cir. 1987) (permitting debtor to use cash collateral to expand operations after finding there was only a low risk that secured creditor's interest would diminish); *In re Stein*, 19 B.R. at 459 (granting cash collateral motion and declaring that access to cash is imperative for a debtor to operate its business); *see also In re Megan-Racine Assocs. Inc*, 202 B.R. 660, 663 (Bankr. N.D.N.Y. 1996) (noting, in connection with motion to approve use of cash collateral, that "[w]hat is important at this juncture in the case in any determination of additional adequate protection is the future stability of the value of the collateral, rather than any particular level at value at any one time since the case was commenced").

18.  Use of the Cash Collateral is necessary for the Debtor's operations to continue during this chapter 11 case. The Debtor does not have available sources of working capital and financing to carry on the operation of its business without the use of the Cash Collateral. The Debtor's ability to maintain business relationships its vendors is dependent on its ability to continue to operate its business without interruption, and the

Debtor cannot operate its business unless it can fund payments for postpetition services and other operating expenses.  Thus, use of the Cash Collateral is essential to the Debtor's continued viability and the value of its business as a going concern and will enhance the prospects for a successful reorganization of the Debtor.  Furthermore, the alternative in this case is "to force the debtors to close down their operations and thus doom any effort at reorganization which will hopefully extract the maximum value of the assets involved to the benefit of *all* classes of creditors and other constituencies involved in this case." *Dynaco Corp.*, 162 B.R. at 396. Because this result would stand in diametrical opposition to the rehabilitative purpose of chapter 11, approval of the Debtor's motion is warranted. *Id.* at 394 (noting that "it is apparent that the Congress intended business under reorganization to proceed in as normal a fashion as possible") (quoting *In re Prime, Inc.*, 15 B.R. 216, 219 (Bankr. W.D. Mo. 1981)).

### B.     The Proposed Adequate Protection

19.     As noted above, a debtor's authority to use cash collateral is typically conditioned on providing "adequate protection" to entities that assert an interest in such cash. 11 U.S.C. § 363(e).  "The concept of 'adequate protection' is not defined in the [Bankruptcy] Code except by the implications of the examples of adequate protection listed in § 361." *In re Beker Indus. Corp*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).  Section 361 of the Bankruptcy Code contains a non-exhaustive list of acceptable forms of adequate protection, including a cash payment or periodic cash payments, additional liens, replacement liens, and the "indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361.

20.     Importantly, the entitlement to, form, and amount of adequate protection should be based on a showing that the use of cash collateral will cause the value of a secured creditor's collateral to decrease:

> Despite its form, the entitlement to and measure of adequate protection is always determined by the extent of the anticipated or actual decrease in the value of the secured creditor's collateral during the bankruptcy case . . . . Where a debtor desires to use cash collateral, a court must determine the value of the creditor's interest in the cash collateral and whether the debtor's proposed use of cash collateral would impair that interest, and to what extent adequate protection is required.

*In re Gallegos Research Group, Corp.*, 193 B.R. 577, 584 (Bankr. D. Col. 1995). Moreover, courts should take equitable considerations into account in determining what constitutes adequate protection. *See Dynaco*, 162 B.R. at 394 ("Adequate protection will take many forms, only some of which are set forth in section 361 of the Bankruptcy Code . . . and must be determined based upon equitable considerations arising from the particular facts of each proceeding."); *Stein*, 19 B.R. at 459 ("The equities in each case must be weighed in striking a balance.").

21.     Consistent with the purposes underlying the provision of adequate protection, the proposed Interim Order provides Prepetition Secured Lenders with more than sufficient adequate protection to protect them from any diminution in value of their interests in the Prepetition Collateral during the pendency of this chapter 11 case. The Debtor intends to provide the Prepetition Secured Lenders with adequate protection, which includes: (a) allowed superpriority administrative claims pursuant to section 507(b) of the Bankruptcy Code; (b) replacement liens on all property of the Debtor (excluding any avoidance actions under chapter 5 of the Bankruptcy Code) and all products, proceeds,

rents, issues and profits thereof; (c) adherence to a budget; (d) maintenance of the Replacement Lien Collateral; and (e) maintenance of certain insurance.

22. The proposed adequate protection package is more than sufficient under the circumstances of this case, where the Debtor's budget shows that the Debtor will remain cash flow positive and where the Debtor had unused availability of approximately $1.8 million under its senior Credit Facility as of the Petition Date. Moreover, the replacement liens being granted to the Prepetition Senior Lender cover collateral not included in its prepetition collateral package.

23. The Debtor requires access to the cash generated from its business activities in order to fund its ongoing operations. As described above and in the First Day Declaration, if the Debtor is prohibited from using its cash, the Debtor's ability to continue as a going concern would be jeopardized. The preservation of the Debtor's business as a going concern in and of itself provides "adequate protection" for purposes of the Bankruptcy Code. *See 495 Cent. Park. Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (noting that whether the value of the debtor's property will increase as a result of the use of collateral is part of considering whether a party is adequately protected).

24. Accordingly, the adequate protection provided for in the Interim Order is fair and reasonable under the circumstances, satisfies the requirements of section 363(c)(2) and 363(e) of the Bankruptcy Code, and is in the best interest of the Debtor, its estate, and all parties in interest.

**C.    Interim Approval Of the Use of Cash Collateral Should Be Granted**

25. Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than 14 days after the service of such motion. Similarly, Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is

necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to use, sell, lease . . . property of the debtor's estate."

26. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

27. Pursuant to Bankruptcy Rules 4001(b) and 6003, the Debtor requests that the Court conduct an expedited preliminary hearing on the Motion and (a) authorize the Debtor to use Cash Collateral of the Prepetition Secured Lenders, to (i) maintain and finance the ongoing operations of the Debtor, and (ii) avoid immediate and irreparable harm and prejudice to the Debtor's estate and all parties in interest, and (b) schedule the Interim Hearing on the relief requested herein.

28. Absent authorization from the Court to use any such Cash Collateral on an interim basis pending the Interim Hearing, the Debtor will be immediately and irreparably harmed. As set forth above, the Debtor's ability to use such Cash Collateral is critical to its ability to operate its business and preserve value. The Interim Order was negotiated in good faith, and its terms and conditions are reasonable under the circumstances.

29. Without immediate liquidity provided by the use of such Cash Collateral, the Debtor will simply be unable to conduct normal business operations, will be unable to pay basic expenses, such as payroll and utilities, and will suffer a precipitous loss of value to the detriment of all parties in interest. Serious and irreparable harm to the

Debtor and its estate would occur, with disastrous consequences for the Debtor, its estate and creditors. The Interim Order seeks approval to use such Cash Collateral only in the amount necessary to sustain the Debtors' operations prior to the Interim Hearing.

## NOTICE

30. Notice of the hearing on this Motion has been given to: (a) the creditors listed on the Debtor's consolidated list of thirty largest unsecured creditors, as filed with the Debtor's chapter 11 petition; (b) counsel for Prepetition Secured Lenders, and (c) the United States Trustee for the District of Delaware. As this Motion is seeking first day relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m). The Debtor respectfully submits that no further notice of this Motion is required.

WHEREFORE, the Debtor respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: March 13, 2016
      Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL, LLP

*/s/ Erin R. Fay*
Robert J. Dehney (No. 3578)
Erin R. Fay (No. 5268)
Tamara K. Minott (No. 5643)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
rdehney@mnat.com
efay@mnat.com
tminott@mnat.com

*Proposed Attorneys for Debtor and Debtor-in Possession*

9909939.2