IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| PREMIUM TRANSPORTATION SERVICES, INC., ) | Case No. 16-10629 (KJC) |
| d/b/a Total Transportation Services ) | |
| ) | **RE D.I. 6, 19, 58 and 100** |
| Debtor[1] ) | |
| ) | |

## THIRD INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION AND (III) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion") [D.I. 6] of Premium Transportation Services, Inc. (the "Debtor") requesting this Court's authorization to use the cash collateral of California United Bank ("Prepetition Senior Lender") and TTSI Financing, LLC ("Prepetition Junior Lender"; together with Prepetition Senior Lender, the "Prepetition Secured Lenders"), pursuant to 11 U.S.C. § 363(c)(2), Fed. R. Bankr. P. 4001 and Local Rule 4001-2, on an interim basis and pending a final hearing on the Motion pursuant to the budget attached hereto as Exhibit A ("Budget"); and due and proper notice of the Motion having been given to all parties entitled thereto; and the first interim hearing (the "First Interim Hearing") on the Motion having been held pursuant to the provisions of Fed. R. Bankr. P. 4001(b)(2) and Local Rule 4001-2 on March 15, 2016; and this Court having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion; and the first interim order (the "First Interim Order") having been entered by this Court on March 15, 2016 [D.I. 19]; and the second interim hearing

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: Premium Transportation Services, Inc. (3417). The Debtor's corporate headquarters is located at 18735 South Ferris Place, Rancho Dominguez, California 90220.

(the "Second Interim Hearing") on the Motion having been held pursuant to the provisions of Fed. R. Bankr. P. 4001(b)(2) and Local Rule 4001-2 on March 24, 2016; and this Court having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion; and the second interim order (the "Second Interim Order") having been entered by this Court on March 24, 2016 [D.I. 58]; and this Court having completed a third interim hearing (the "Third Interim Hearing") pursuant to Code § 363, Fed. R. Bankr. P. 4001(b) and (d) and Local Rule 4001-2, and objections, if any, having been withdrawn, resolved or overruled by the Court, **THE COURT HEREBY FINDS THAT:**

A. On March 13, 2016 (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101, et seq., the "Code"). Debtor has retained possession of its property and continues to operate its business as debtor in possession pursuant to Code §§ 1107 and 1108.

B. The Court has jurisdiction over the Case and this proceeding under 28 U.S.C. § 1334. Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue over this Motion is proper under 28 U.S.C. § 1409(a).

C. On April 4, 2016, the Office of the United States Trustee formed an official committee of unsecured creditors in the case (the "Committee").

D. Debtor has represented to the court that: (1) it made a $17,850,000 promissory note payable to Junior Secured Lender pursuant to that certain Second Amended and Restated Promissory Note, dated October 3, 2011 and restated July 15, 2014 (the "Note"), by and among Debtor (as successor by merger to Total Transportation Services, Inc. ("TTSI")) and Prepetition Junior Lender and (2) the indebtedness under the Note is secured by substantially all of the assets (the "Junior Prepetition Collateral") of the Debtor as more fully described in that certain Security

2

Agreement (the "Junior Security Agreement"), dated October 3, 2011, by and among Debtor (as successor by merger to TTSI) and Prepetition Junior Lender (the Note, Security Agreement and other related documents are collectively the "Junior Prepetition Documents"). All indebtedness or obligations under the Junior Prepetition Documents as of the Petition Date, including, without limitation, all principal under the Note, and all fees, costs, interest, and expenses as and when due and payable pursuant to the Junior Prepetition Documents are referred to herein as the "Junior Prepetition Debt." The terms of the Junior Prepetition Debt were negotiated at arms' length between Debtor and Junior Secured Lender's predecessors in interest, and the terms of the Note have not been altered or amended by the Junior Secured Lender, except to extend the term of the Note.

E. Debtor has represented to the court that (1) it has guaranteed the obligations of Saybrook Logistics Acquisition, LLC ("Parent") under a $4,000,000 revolving credit facility pursuant to (a) that certain Credit Agreement dated May 12, 2014 (as amended or modified, the "Credit Agreement") by and among Parent, Prepetition Senior Lender and Debtor; (b) that certain Assignment and Assumption Agreement, Amendment and Waiver, dated March 1, 2016 (the "Assignment"), by and among Parent, Prepetition Senior Lender, and Debtor; and (c) that certain Continuing Guarantee, dated March 1, 2016 (the "Guarantee") by and among Debtor and Prepetition Senior Lender (2) the obligations of the Debtor under the Guarantee are secured by substantially all of the assets of the Debtor, excluding Debtor's truck fleet (the "Senior Prepetition Collateral"; together with the Junior Prepetition Collateral, the "Prepetition Collateral"), as more fully described in the Third Party Security Agreement dated as of March 1, 2016 (the "Senior Security Agreement") by and among Debtor and Prepetition Senior Lender (the Credit Agreement, Assignment Agreement, Guarantee and Senior Security Agreement and

3

other related documents are collectively the "Senior Prepetition Documents"; together with the Junior Prepetition Documents are the "Prepetition Documents"). All indebtedness or obligations under the Senior Prepetition Documents as of the Petition Date, including, without limitation, all principal under the Credit Agreement, and all fees, costs, interest, and expenses as and when due and payable pursuant to the Senior Prepetition Documents are referred to herein as the "Senior Prepetition Debt." The terms of the Senior Prepetition Debt were negotiated at arms' length between Debtor and the Senior Secured Lender.

F. All cash and cash equivalents of the Debtor are asserted by the Prepetition Secured Lenders as Prepetition Collateral or proceeds thereof. The Debtor acknowledges that these funds constitute the "cash collateral" of the Prepetition Secured Lenders (the "Cash Collateral") within the meaning of 11 U.S.C. § 363(a).

G. Prepetition Secured Lenders are entitled to adequate protection as set forth herein pursuant to Code §§ 361 and 363 for any decrease in the value of such alleged interests in the Prepetition Collateral from and after the Petition Date.

H. The Debtor has requested that the Prepetition Secured Lenders consent to the Debtor's use of the Cash Collateral in order to provide funds to be used in the operation of the Debtor's business. If the Debtor's business were to cease operations, the Debtor and its creditors, including employees, would suffer irreparable harm.

I. Subject to the terms and conditions set forth in this Order, Prepetition Secured Lenders are willing to consent to the entry of this Order. Nothing contained in this Order shall or shall be construed to waive, impair, limit or prejudice in any way the Prepetition Secured Lenders' rights to contest or object to any further or other use of the Cash Collateral by the Debtor.

J.      The terms of this Order have been negotiated at arm's length and in good faith.

K.      Under the circumstances of this Case, this Order is a fair and reasonable response to Debtor's request for Prepetition Secured Lenders' consent to the use of Cash Collateral, and the entry of this Order is in the best interest of Debtor's estate and its creditors.

L.      The notice provided by Debtor of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(b) and (d), and 9014, Local Rule 9013-1(m) and Code §§ 102(1) and 363 and were otherwise sufficient and appropriate under the circumstances.

M.      This Order constitutes findings of fact and conclusions of law under Fed. R. Bankr. P. 7052 and will take effect and be fully enforceable as of the Petition Date.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is hereby granted on an interim basis, subject to the terms and conditions set forth in this Order.

2.      Through the earlier to occur of (a) the date on which either Prepetition Secured Lender provides (via email, facsimile, or courier) to the Debtor's counsel, counsel of the other Prepetition Secured Lender, counsel to the Office of the United States Trustee and counsel to the Committee notice of the occurrence of an "Event of Default" (as defined below) and such Event of Default remains uncured; and (b) April 20, 2016 (the "Termination Date"), the Debtor is authorized to use Cash Collateral in accordance with the Budget, with a permitted variance of five percent (5%) per expense line item, to pay the expenses specified in the Budget. The Budget may be modified with the prior written consent of Prepetition Secured Lenders, without further order of the Court. Each modified budget shall be filed with the Court.

3. <u>Procedure for Use of Cash Collateral</u>. Debtor shall provide access to all Cash Collateral now or hereafter in its possession or control to Prepetition Senior Lender promptly upon receipt thereof. Prepetition Senior Lender is authorized to collect upon, convert to cash and enforce checks, drafts, instruments and any other forms of payment now or hereafter coming into its possession or control that constitute Cash Collateral or proceeds thereof, and otherwise administer such amounts in accordance with this Order. The Debtor is only permitted to use Cash Collateral to the extent and when permitted in accordance with Paragraph 2 of this Order. Pending further order of Court, all other Cash Collateral shall be held in the Debtor's accounts with the Prepetition Senior Lender, and shall not be transferred, shall remain Cash Collateral, and may be subject to a further request by the Debtor for use of such Cash Collateral to the extent authorized by Court Order.

4. As adequate protection for any use or diminution (whether by depreciation, use, sale, loss, or otherwise) in the value of each Prepetition Secured Lender's respective interest in the Prepetition Collateral (including, without limitation, the Cash Collateral), each Prepetition Secured Lender is hereby granted, retroactive to the Petition Date and without the necessity of any additional documentation or filings, valid, enforceable, non-avoidable, and fully perfected liens ("<u>Replacement Liens</u>") upon all property of the Debtor (excluding any avoidance actions under chapter 5 of the Bankruptcy Code) and all products, proceeds, rents, issues and profits thereof (collectively, the "<u>Replacement Lien Collateral</u>"). The Replacement Liens are in addition to, and shall have the same relative priority as, the Prepetition Secured Lenders' liens and security interests on the Petition Date (the "<u>Prepetition Liens</u>") and shall secure the amount

by which the value of the applicable Prepetition Lender's interest in its collateral decreases as a result of the use of Cash Collateral or the imposition of the automatic stay in this case.

5. As further adequate protection of each Prepetition Secured Lender's interests:

(a) The Debtor shall maintain and keep the Replacement Lien Collateral in good condition, repair and working order (normal wear and tear excepted);

(b) The Debtor shall maintain all insurance that existed as of the Petition Date with respect to the Debtor's business, the Prepetition Collateral and the Replacement Lien Collateral; and

The grant of adequate protection provided herein is without prejudice to the Prepetition Secured Lenders' right to seek additional adequate protection of their interests in the Debtor's property at any time.

6. If and to the extent the adequate protection of the interests of Prepetition Senior Lender in the Prepetition Collateral granted pursuant to this Order proves insufficient, the Prepetition Senior Lender will have an allowed claim under Code § 507(b) in the amount of any such insufficiency, with priority over the claims of any other party in interest under Code § 507(b) (the "Senior 507(b) Claim"). If and to the extent the adequate protection of the interests of Prepetition Junior Lender in the Prepetition Collateral granted pursuant to this Order proves insufficient, the Prepetition Junior Lender will have an allowed claim under Code § 507(b) in the amount of any such insufficiency, with priority over the claims of any other party in interest under Code § 507(b) except the Senior 507(b) Claims, which will be senior to the 507(b) claims of the Prepetition Junior Lender.

7. In connection with the sale or other disposition, whether under Code § 363, Code § 1129 or otherwise, of all or any portion of the Prepetition Collateral or the Replacement Lien Collateral (the "Aggregate Collateral") in which Prepetition Senior Lender has an interest, pursuant to Code § 363(k), Prepetition Senior Lender shall have the right to use the Senior

Prepetition Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of such Aggregate Collateral.

8. In connection with the sale or other disposition, whether under Code § 363, Code § 1129 or otherwise, of all or any portion of the Aggregate Collateral in which Prepetition Junior Lender has an interest, pursuant to Code § 363(k), Prepetition Junior Lender shall have the right to use the Junior Prepetition Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of such Aggregate Collateral, *provided* that Prepetition Senior Lender must be paid in full in cash from the proceeds of any such bid made by Prepetition Junior Lender.

9. Other than with Prepetition Secured Lenders' consent, the Debtor is prohibited from using additional Cash Collateral prior to the Termination Date. Unless otherwise ordered by the Court, the Debtor is also prohibited from seeking to incur or incurring debt pursuant to 11 U.S.C. § 364 at any time prior to the Termination Date.

10. Unless otherwise ordered by the Court, the Debtor's authority to use the Cash Collateral pursuant to this Order shall automatically terminate on the Termination Date, without further action by Prepetition Secured Lenders and unless subsequently extended by written agreement of the Debtor and Prepetition Secured Lenders. On the Termination Date, Prepetition Secured Lenders and Debtor will be entitled to apply to this Court for all appropriate relief, upon such notice as may be appropriate under the circumstances; *provided, however*, that: (1) the obligations of the Debtor and the rights of Prepetition Secured Lenders with respect to all transactions which have occurred prior to the Termination Date shall remain unimpaired and unaffected; and (2) the Debtor and Prepetition Secured Lenders shall retain all of their respective rights and remedies under the Code, including, without limitation, the Debtor's right to request

8

the continued use of Cash Collateral and Prepetition Secured Lenders' respective rights to oppose the Debtor's further use of Cash Collateral and to move for relief from the automatic stay.

11. For purposes of this Order, an "Event of Default" shall mean:

(a) The violation by the Debtor of any of the terms of this Order;

(b) The entry of an order converting the Case to a case under chapter 7 of the Code or terminating the authority of the Debtor to operate its business;

(c) The termination, expiration, lapse, or reduction of insurance coverage that is continuing on the Replacement Lien Collateral for any reason whatsoever;

(d) The Debtor's failure to pay, when due, any postpetition taxes; and

(e) The appointment of a trustee in this Case.

12. Carveout.

(a) Notwithstanding anything to the contrary, the Prepetition Liens, the Replacement Liens, the Senior 507(b) Claims, and the Junior 507(b) claims will be subject to the right of payment of the following expenses (collectively, the "Carveout"):

(i) to the extent allowed at any time by the Court, but subject in all respects to the aggregate amounts set forth in the current Budget attached hereto, all accrued and unpaid fees, disbursements, costs and expenses incurred by Morris, Nichols, Arsht & Tunnell LLP (as counsel for Debtor) and the professionals or professional firms retained by the Committee (the "Carveout Professionals"); and

(ii) all fees required to be paid to the clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code, plus interest at the statutory rate.

9

(b) <u>Carveout Terms</u>. The Carveout with respect to each Carveout Professional: (1) shall equal an aggregate amount not to exceed the lesser of (i) the aggregate amount provided in the Budget for such Carveout Professional for the period commencing on the Filing Date and ending on the Termination Date and (ii) the aggregate amount of allowed fees and expenses that accrue during the period commencing on the Filing Date and ending on the Termination Date; (2) shall be reduced dollar-for-dollar by any payments of fees and expenses to such Carveout Professional; and (3) shall be paid out of any prepetition retainer or property of the estate (other than property subject to an unavoidable lien in favor of the Prepetition Secured Lenders) before such payments are made from proceeds of the Aggregate Collateral.

(c) <u>Carveout Usage</u>. No portion of the Carveout and no Aggregate Collateral (or proceeds thereof) may be used to pay any fees or expenses incurred by any entity, including the Debtor, any Committee or the Carveout Professionals, in connection with claims or causes of action adverse to the Prepetition Secured Lenders' respective interests in the Aggregate Collateral, including (1) preventing, hindering or delaying Prepetition Secured Lenders' enforcement or realization upon any of the Aggregate Collateral once an Event of Default has occurred; (2) using or seeking to use Cash Collateral or incurring indebtedness in violation of the terms hereof, or selling any Aggregate Collateral without the consent of Prepetition Secured Lenders; or (3) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Prepetition Debt or any mortgages, liens or security interests with respect thereto or any other rights or interests of the Prepetition Secured Lenders, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Code, against Prepetition Secured Lenders; provided, however, that the Carveout may be used to pay fees and expenses incurred by the

Carveout Professionals in connection with the investigation of the Prepetition Documents and the liens on and security interests in the Prepetition Collateral and in connection with negotiation, preparation, and entry of this Order or any amendment hereto consented to by the Prepetition Secured Lenders.

(d) Carveout Procedure. The Debtor shall periodically, upon the request of either Prepetition Secured Lender, provide to the Prepetition Secured Lenders a written report (the "Carveout Report"), in which the Debtor discloses its then current estimate of (1) the aggregate amount of unpaid professional fees, costs and expenses accrued or incurred by the Carveout Professionals, through the date of the Carveout Report, and (2) projected fees, costs and expenses of the Carveout Professionals for the 30 day period following the date of such Carveout Report. Nothing herein shall be construed as consent by Prepetition Secured Lenders to the allowance of any fees or expenses of the Carveout Professionals or shall affect the right of a Prepetition Secured Lender to object to the allowance and payment of such fees, costs or expenses, or the right a Prepetition Secured Lender to the return of any portion of the Carveout that is funded with respect to fees and expenses for a Carveout Professional that are approved on an interim basis that are later denied on a final basis. For the avoidance of doubt, no Carveout Professional shall be entitled to any portion of the Carveout allocated for any other Carveout Professional in the Budget.

(e) Each of the provisions in this Paragraph 12, to the extent it allows for the use of Cash Collateral to make payment to Carveout Professionals shall expire upon the Termination Date, but the accrued and unpaid fees and amounts subject to the Carveout shall be permitted to be paid from Cash Collateral to the extent approved by the Court and consistent with the Budget, and the Prepetition Secured Lenders each reserve the right to object to any

provisions related to the payment of administrative expenses that may be sought for any period after the Termination Date.

13. Challenge Period.

(a) With respect to the Prepetition Secured Lenders and the liens of and obligations owed to such Prepetition Secured Lenders, any Committee, any Trustee, or other party-in-interest, with the requisite standing, including the Debtor, (a "Challenge Party"), may not object to, or seek to avoid or otherwise attack the validity (a "Challenge") of such obligations and liens (including challenging whether the Prepetition Junior Documents were negotiated at arms' length), unless, and solely to the extent that, (i) Debtor and such Prepetition Secured Lender receive written notice of a potential objection during the Investigation Period from a Challenge Party in accordance with this Paragraph 13, (ii) the Debtor or any Challenge Party initiates a contested matter or an adversary proceeding in respect of such Challenge on or before the applicable Challenge Filing Deadline (as defined below) and (iii) the Court rules in favor of the Challenging Party in any such timely and properly filed Challenge, all Challenges shall be barred as set forth below. "Investigation Period" means the period from the Petition Date until the date that is the earliest of (i) seventy-five (75) days after the Petition Date and (ii) sixty (60) days after the date that the Committee was appointed in this case.

(b) Challenge Procedure. During the Investigation Period, a Challenge Party will be entitled to determine whether a basis to assert a Challenge exists. If a Challenge Party identifies a basis to assert a Challenge, then if the Challenge Party is not the Debtor, it must notify Debtor and the affected Prepetition Secured Lender in a writing during the Investigation Period of its demand that Debtor initiate a contested matter or an adversary proceeding in respect of such Challenge. From the date that Debtor and the affected Prepetition Secured Lender

receive such written notice, Debtor will then have five (5) days to notify the Challenge Party of whether Debtor intends to initiate such action and ten (10) days to initiate any such action (the "Debtor's Challenge Procedure"). If Debtor notifies such Challenge Party that Debtor does not intend to initiate a contested matter or an adversary proceeding, then such Challenge Party will have ten (10) days from the receipt of such notice to file a motion with the Court for leave to initiate a contested matter or an adversary proceeding in respect of such Challenge (the "Challenge Parties' Challenge Deadline" and, the later of any Debtor's Challenge Deadline and Challenge Parties' Challenge Deadline applicable hereunder, the "Challenge Filing Deadline"). Nothing herein grants standing in favor of any Challenge Party absent further order of this Court. Debtor, if timely notified of a potential Challenge, will retain authority to prosecute, settle, or compromise any such Challenge in the exercise of its business judgment and subject to any applicable further order of Court.

(c) Bar of Challenges and Claims. If Debtor and the affected Prepetition Secured Lender do not receive written notice of a potential Challenge during the Investigation Period (or such later date as agreed to in writing by the affected Prepetition Secured Lender or for cause shown by an order of this Court), or if the Debtor or any Challenge Party do not initiate a contested matter or an adversary proceeding in respect of such Challenge on or before the applicable Challenge Filing Deadline, then, without further order of the Court, (1) the claims, liens, and security interests of the affected Prepetition Secured Lenders will be deemed to be allowed for all purposes in this case and will not be subject to any challenge whatsoever by any party in interest as to extent, validity, priority, or otherwise and (2) Debtor and its estate will be deemed to have waived, released, and discharged the affected Prepetition Secured Lender, and each of its affiliates, shareholders, subsidiaries, agents, officers, directors, members, managers,

13

employees, representatives, attorneys, advisors, principals, consultants, predecessors in interest, successors, and assigns of and from any and all claims and causes of action, indebtedness, and obligations, of every type and nature whatsoever, that occurred on or prior to the date of entry of this Order arising out of, based upon or related to the Prepetition Documents, the Prepetition Liens, the Prepetition Senior Debt or the Prepetition Junior Debt, as applicable, except with regard to the rights of the Prepetition Secured Lenders which are expressly preserved; provided, however that such release shall not apply to intercompany claims between the Debtor and its affiliates or parent that are unrelated to the Junior Prepetition Debt.

14. No Surcharge. In the exercise of its business judgment, Debtor agrees that there shall be no surcharge of the Aggregate Collateral for any purpose, unless agreed to by the Prepetition Secured Lenders. Further, Debtor represents that the Budget contains all expenses that are reasonable and necessary for the operation of their businesses and the preservation of the Aggregate Collateral through the period for which the Budget runs, and therefore includes all items potentially chargeable to the Prepetition Secured Lenders under Code § 506(c). Therefore, subject to the entry of a Final Order, the Debtor (or any Trustee) shall be deemed to have waived any rights, benefits or causes of action under Code § 506(c), the enhancement of collateral provisions of Code § 552, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) as they may relate to or be asserted against each Prepetition Secured Lender or the Aggregate Collateral.

15. Application of Sale Proceeds. All proceeds from sales or other dispositions of all or any portion of the Aggregate Collateral other than in the ordinary course shall be remitted (i) to Prepetition Senior Lender for application to the Prepetition Senior Debt and (ii) for any

14

amount in excess of the Prepetition Senior Debt, to Prepetition Junior Lender for application to the Prepetition Junior Debt.

16. General Relief.

(a) Subject to the entry of a final order, the Prepetition Secured Lenders and the Prepetition Collateral will not be subject to the doctrine of marshaling.

(b) To the extent there exists any conflict among the Motion, the Prepetition Documents, and the terms of this Order, this Order shall govern and control.

(c) The automatic stay of Code § 362 is hereby modified to the extent necessary to effectuate the provisions of this Order.

(d) Prepetition Secured Lenders will not be deemed to have suspended or waived any of their respective rights or remedies under this Order, the Prepetition Documents, the Code, or applicable non-bankruptcy law unless such suspension or waiver is hereafter made in writing, signed by a duly authorized officer or agent such Prepetition Secured Lender, as applicable, and directed to Debtor. No failure of Prepetition Secured Lenders to require strict performance by Debtor (or by any Trustee) of any provision of this Order will waive, affect or diminish any right of such Prepetition Secured Lender thereafter to demand strict compliance and performance therewith, and no delay on the part of either Prepetition Secured Lender in the exercise of any right or remedy under this Order, the Prepetition Documents or applicable non-bankruptcy law will preclude the exercise of any right or remedy. Further, this Order does not constitute a waiver by Prepetition Secured Lenders of any of their respective rights under the Prepetition Documents, the Code or applicable non-bankruptcy law, including, without limitation, a Prepetition Secured Lender's right to later assert (a) that any of its interests in the

15

Collateral lack adequate protection within the meaning of Code §§ 362(d) or 363(e) or any other provision thereof or (b) a claim under Code § 507(b).

(e)  This Order is binding on all parties in interest in the Case and their respective successors and assigns, including, without limitation, any subsequently appointed chapter 11 or chapter 7 trustee of the Debtor ("Trustee"), except that any Trustee will have the right to terminate this Order after notice and a hearing, subject to the terms and conditions of this Order. If this Order does not become a final non-appealable order, if a Trustee terminates this Order, or if any of the provisions of this Order are hereafter modified, amended, vacated, or stayed by any subsequent order of this Court or any other court, such termination or subsequent order shall not affect: (a) the priority, validity, enforceability or effectiveness of any lien, security interest or other benefit or claim authorized hereby with respect to Cash Collateral used prior to the effective date of such termination or subsequent order. All such liens, security interests, claims and other benefits will be governed in all respects by the original provisions of this Order.

17. The Motion is hereby set for final hearing before this Court at 2:30 p.m. (ET) on April 20, 2016 (such date or such later date to which such hearing is adjourned or continued, the "Final Hearing"), at which time any party in interest may present any timely filed objections to the entry of a further order containing relief substantially similar to that contained in this Order, and potentially containing additional relief requested by, but not granted to Prepetition Secured Lenders in this Order. Notwithstanding the foregoing, the Prepetition Secured Lenders may consent to an extension of the Debtor's continued use of Cash Collateral without the need for a further hearing.

18. The Debtor shall promptly serve a notice of the entry of this Order and such Final Hearing, together with a copy of this Order, by regular mail upon (i) the Office of the United States Trustee, (ii) the creditors holding the 30 largest unsecured claims against the Debtor, (iii) any known holders of prepetition liens against the Debtor's property, and (iv) any other party which has filed a request with this Court for notice in the Debtor's case and served such request upon the Debtor's counsel. The notice of the Final Hearing shall state that objections to the entry of a Final Order on the Motion shall be in writing and shall be filed with the United States Bankruptcy Clerk for the District of Delaware no later than April 13, 2016, which objections shall be served so that the same are received on or before 4:00 p.m. (Eastern time) of such date by (i) proposed counsel to the Debtor, Robert J. Dehney and Erin R. Fay, Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, Wilmington, DE 19899, email: rdehney@mnat.com and efay@mnat.com, (ii) counsel of record to the Prepetition Junior Lender, Randall Klein and Jacob Marshall, Goldberg Kohn Ltd., 55 E. Monroe, Suite 3300, Chicago, IL 60603; email: Randall.Klein@goldbergkohn.com and Jacob.Marshall@goldbergkohn.com and Gregory Donilon, Pinckney, Weidinger, Urban & Joyce LLC, 3711 Kennett Pike, Suite 210, Greenville, DE 19807; email: gdonilon@pwujlaw.com; (iii) counsel for Prepetition Senior Lender, Daniel Slate, Buchalter Nemer, 1000 Wilshire Blvd., Suite 1500, Los Angeles, CA 90017-2457, email: DSlate@buchalter.com and John Knight, Richards Layton & Finger LLP, One Rodney Square, 920 N. King Street, Wilmington, DE 19801, email: knight@rlf.com; (iv) counsel for the Committee, and (v) the Office of the United States Trustee. Any objections

by creditors or other parties in interest to any of the provisions of this Order shall be deemed waived unless filed and served in accordance with this paragraph.

Dated: April 6, 2016
       Wilmington, Delaware

_____
THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

9947855.1