**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PREMIUM TRANSPORTATION SERVICES, INC., d/b/a Total Transportation Services, | ) | Case No. 16-10629 (KJC) |
| | ) | |
| Debtor.[1] | ) | |

**DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION**
**PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Robert J. Dehney (No. 3578)
Erin R. Fay (No. 5268)
Tamara K. Minott (No. 5643)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street, 16th Floor
Wilmington, Delaware 19801
(302) 658-9200

*Counsel to Debtor and Debtor in Possession*

Dated: June 10, 2016

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: Premium Transportation Services, Inc. (3417). The Debtor's corporate headquarters is located at 18735 South Ferris Place, Rancho Dominguez, California 90220.

TABLE OF CONTENTS

**Page**


INTRODUCTION ....... 1

ARTICLE I. DEFINITIONS AND CONSTRUCTION OF TERMS ....... 1

A. Definitions. ....... 1

B. Interpretation, Application of Definitions, and Rules of Construction. ....... 11

C. Computation of Time. ....... 11

ARTICLE II. ADMINISTRATIVE CLAIMS, FEE CLAIMS, AND PRIORITY CLAIMS ....... 11

A. Administrative Claims (Other Than Fee Claims). ....... 11

B. Fee Claims. ....... 12

C. Priority Tax Claims. ....... 12

D. U.S. Trustee Fees. ....... 13

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS ....... 13

A. Classification of Claims and Equity Interests. ....... 13

B. Record Date. ....... 13

C. Summary of Classification and Class Identification. ....... 13

D. Treatment of Classified Claims and Equity Interests. ....... 14

E. Special Provision Regarding Unimpaired Claims. ....... 17

F. Nonconsensual Confirmation. ....... 18

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ....... 18

A. Operations Between the Confirmation Date and Effective Date ....... 18

B. Committee Dissolution ....... 18

C. New Common Stock ....... 18

D. Continued Corporate Existence and Vesting of Assets. ....... 19

E. Preservation of Causes of Action. ....... 19

F. Claims Incurred After the Effective Date. ....... 20

G. Corporate Action. ....... 20

ARTICLE V. PROVISIONS REGARDING CORPORATE GOVERNANCE OF THE REORGANIZED DEBTOR ....... 20

A. Organizational Documents. ....... 20

B. Appointment of Officers and Directors. ....... 20

C. Powers of Officers. ....... 20

D. Indemnification of Directors, Officers, and Management. ....... 21

ARTICLE VI. CONFIRMATION OF THE PLAN ....... 21

A. Conditions to Confirmation......21
ARTICLE VII. SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS ......21
A. General Settlement of Claims and Interests......21
B. Subordination of Claims ......22
C. Discharge of the Debtor. ......22
D. Release of Liens. ......23
E. Releases by the Debtor......23
F. Releases by Certain Parties. ......24
G. Exculpation......25
H. Injunction. ......26
I. Limitations on Exculpations and Releases......26
J. Preservation of Insurance. ......26
ARTICLE VIII. CLAIMS OBJECTIONS AND DISTRIBUTIONS UNDER THE PLAN ......27
A. Claims Objections......27
B. Allowed Claims and Equity Interests. ......27
C. Allocation of Consideration. ......30
D. Estimation. ......30
E. Insured Claims......31
ARTICLE IX. RETENTION OF JURISDICTION......31
ARTICLE X. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ......33
A. Rejection of Executory Contracts and Unexpired Leases......33
B. Assumption of Executory Contracts and Unexpired Leases......33
C. Cure Claims......33
D. Reservation of Rights......34
E. Insurance Policies. ......35
F. Post-Petition Contracts and Leases......35
ARTICLE XI. EFFECTIVENESS OF THE PLAN ......35
A. Conditions Precedent to Effectiveness. ......35
B. Waiver of Conditions Precedent to Effectiveness. ......36
C. Effect of Failure of Conditions......36
D. Vacatur of Confirmation Order. ......36
E. Modification of the Plan. ......36
F. Revocation, Withdrawal, or Non-Consummation. ......36
ARTICLE XII. MISCELLANEOUS PROVISIONS ......37

A. Immediate Binding Effect. ....37
B. Governing Law. ....37
C. Filing or Execution of Additional Documents. ....37
D. Term of Injunctions or Stays. ....37
E. Exemption From Transfer Taxes. ....38
F. Plan Supplement. ....38
G. Notices. ....38
H. Conflicts. ....38

## INTRODUCTION

Premium Transportation Services, Inc., d/b/a Total Transportation Services ("PTSI" or the "Debtor") proposes the following plan of reorganization under section 1121(a) of the Bankruptcy Code. The Plan[2] provides for the resolution of outstanding claims against and interests in the Debtor pursuant to the Bankruptcy Code. The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

Reference is made to the Disclosure Statement accompanying the Plan, including the exhibits thereto, for a discussion of the Debtor's history, business, results of operations and projections for future operations and risk factors, together with a summary and analysis of the Plan.

THIS PLAN SHOULD BE CONSIDERED ONLY IN CONJUNCTION WITH THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED HEREWITH. THE DISCLOSURE STATEMENT IS INTENDED TO PROVIDE YOU WITH INFORMATION YOU NEED TO MAKE AN INFORMED JUDGMENT WHETHER TO ACCEPT OR REJECT THIS PLAN.

## ARTICLE I.
## DEFINITIONS AND CONSTRUCTION OF TERMS

### A. Definitions.

Unless otherwise defined herein, the following terms shall have the respective meanings set forth below:

1. *Accrued Professional Compensation*: means, at any given time, and regardless of whether such amounts are billed or unbilled, all accrued, contingent, or unpaid fees and expenses for legal, financial advisory, accounting, and other services, and reimbursement of expenses by any Professional that the Court has not, as of the Effective Date, denied by Final Order (i) all to the extent that any such fees and expenses have not been previously paid (regardless of whether a fee application has been filed for any such amount) and (ii) after applying the remaining balance of any retainer that has been provided by the Debtor to such Professional; provided, however, that Accrued Professional Compensation shall not include fees and expenses that are awardable and allowable under section 503 of the Bankruptcy Code. To the extent the Court denies or reduces by a Final Order any amount of a Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Accrued Professional Compensation.

2. *Administrative Claim*: means any right to payment constituting a cost or expense of administration of the Chapter 11 Case of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, (i) any actual and necessary costs and expenses of preserving the Estate, (ii) any actual and necessary costs and expenses of operating the Debtor's business postpetition, (iii) any indebtedness or obligations assumed by the Debtor in connection with the

[2] Capitalized terms in this Introduction are defined in Section I.A of this Plan.

conduct of its business postpetition, (iv) all compensation and reimbursement of expenses of Professionals to the extent awarded by the Court, (v) any fees or charges assessed against the Estate under section 1930 of title 28 of the United States Code, and (vi) any Claim for goods delivered to the Debtor within twenty (20) days of the Petition Date and entitled to administrative priority pursuant to section 503(b)(9) of the Bankruptcy Code.

3. *Administrative Claims Bar Date*: means the first Business Day that is thirty (30) days after the Effective Date (or such date(s) otherwise ordered by the Bankruptcy Court) for Administrative Claims arising on the Petition Date through and including the Effective Date. For the avoidance of doubt, holders of Fee Claims shall not be subject to the Administrative Claims Bar Date.

4. *Allowed*: means, (i) with respect to any Claim, (a) following any applicable deadline to object to Claims, any Claim as to which no objection or request for estimation has been filed prior to any applicable deadline to object to Claims, (b) a Claim that has been expressly allowed by Final Order, (c) a Claim as to which the Debtor or the Reorganized Debtor agree to the amount or priority thereof in writing, (d) a Claim that is expressly allowed pursuant to the terms of this Plan, or (e) a Claim that is listed in the Schedules as liquidated, non-contingent, and undisputed and (ii) with respect to any Equity Interest, such Equity Interest is reflected as outstanding in the stock transfer ledger or similar register of the Debtor on the Record Date and is not subject to any objection or challenge. If a Claim or Equity Interest is Allowed only in part, any provisions hereunder with respect to Allowed Claims or Allowed Equity Interests are applicable solely to the Allowed portion of such Claim or Equity Interest.

5. *Avoidance Actions*: means claims and causes of action of the Debtor and its estate under Chapter 5 of the Bankruptcy Code.

6. *Ballots*: means each of the ballots distributed with the Disclosure Statement to each holder of an Impaired Claim that is entitled to vote to accept or reject the Plan.

7. *Bankruptcy Code*: means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect with respect to the Chapter 11 Case.

8. *Bankruptcy Court*: means (i) the United States Bankruptcy Court for the District of Delaware, (ii) to the extent there is no reference pursuant to section 157 of title 28 of the United States Code, the United States District Court for the District of Delaware, and (iii) any other court having jurisdiction over the Chapter 11 Case or proceedings arising therein.

9. *Bankruptcy Rules*: means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, and local rules of the Court, as the context may require, as in effect with respect to the Chapter 11 Case.

10. *Business Day*: means any day other than a Saturday, a Sunday or “legal holiday” (as defined in Bankruptcy Rule 9006(a)).

11. *Cash*: means legal tender of the United States of America.

12. *Causes of Action*: means any and all claims, causes of actions, cross-claims, counterclaims, third-party claims, indemnity claims, reimbursement claims, contribution claims, defenses, demands, rights, actions, debts, damages, judgments, remedies, Liens, indemnities, guarantees, suits, obligations, liabilities, accounts, offsets, recoupments, powers, privileges, licenses, and franchises of any kind or character whatsoever, known or unknown, contingent or noncontingent, matured or unmatured, suspected or unsuspected, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, whether arising before, on, or after the Petition Date, including through the Effective Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. For the avoidance of doubt, the term "Causes of Action" shall include: (i) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law or in equity; (ii) the right to object to Claims; (iii) all claims pursuant to sections 362, 510, 542, 543, 544 through 550, 552 or 553 of the Bankruptcy Code; (iv) all claims and defenses, including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (v) any state law fraudulent transfer claims.

13. *Chapter 11 Case*: means the chapter 11 case commenced on the Petition Date by the Debtor in the Bankruptcy Court as Case No. 16-10629 (KJC).

14. *Claim*: means a "claim" against the Debtor, as such term is defined in section 101(5) of the Bankruptcy Code, whether known or unknown.

15. *Claims Objection Deadline*: means the last day for filing objections to Claims, other than Administrative Claims and Fee Claims, which day shall be: (a) the later of (i) 180 days after the Effective Date or (ii) ninety (90) days after the filing of a Proof of Claim for, or request for payment of, such Claim; or (b) such other date as the Bankruptcy Court may order. The filing of a motion to extend the Claims Objection Deadline shall automatically extend the Claims Objection Deadline until a Final Order is entered on such motion. In the event that such motion to extend the Claims Objection Deadline is denied, the Claims Objection Deadline shall be the later of the then-current Claims Objection Deadline (as previously extended, if applicable) or thirty (30) days after the Bankruptcy Court's entry of an order denying the motion to extend the Claims Objection Deadline.

16. *Class*: means a group of Claims or Equity Interests classified under the Plan.

17. *Class 5/6 Guarantee*: means the Guarantee to be provided by the Parent and the Prepetition Junior Lender of the distributions contemplated herein to Classes 5 and 6, in form and substance acceptable to the Parent and the Prepetition Junior Lender and also acceptable in form and substance to the Committee in its good faith and reasonable determination.

18. *Collateral*: means any property, or interest in property, of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien has not been avoided or is not subject to avoidance under the Bankruptcy Code or is otherwise invalid under the Bankruptcy Code or applicable law.

19. *Committee:* means the official committee of unsecured creditors appointed on April 4, 2016 pursuant to section 1102(a) of the Bankruptcy Code in this Chapter 11 Case, as it may be reconstituted from time to time.

20. *Confirmation*: means the entry of the Confirmation Order on the docket of the Chapter 11 Case.

21. *Confirmation Date*: means the date of Confirmation.

22. *Confirmation Hearing*: means the hearing held by the Bankruptcy Court pursuant to Bankruptcy Rule 3020(b)(2) and section 1128 of the Bankruptcy Code, including any adjournments thereof, at which the Court will consider confirmation of the Plan and other related matters.

23. *Confirmation Order*: means the order entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

24. *Cure Claim*: means a Claim in an amount equal to all unpaid monetary obligations under an Executory Contract or Unexpired Lease assumed by the Debtor pursuant to section 365 of the Bankruptcy Code, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law. Any Cure Claim to which the holder thereof disagrees with the priority or amount thereof as determined by the Debtor shall be deemed a Disputed Claim under this Plan.

25. *Debtor* or *PTSI*: means Premium Transportation Services, Inc., d/b/a Total Transportation Services.

26. *Disclosure Statement*: means the Disclosure Statement for Debtor's First Amended Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code, in furtherance of this Plan.

27. *Disputed*: means, with respect to any Claim or Equity Interest, other than a Claim or Equity Interest that has been Allowed pursuant to the Plan or a Final Order, a Claim or Equity Interest (i) that is listed in the Schedules as unliquidated, contingent, or disputed, and as to which no request for payment or proof of Claim or Equity Interest has been filed, (ii) as to which a proper request for payment or proof of Claim or Equity Interest has been filed, but with respect to which an objection or request for estimation has been filed and has not been withdrawn or determined by a Final Order, (iii) that is disputed in accordance with the provisions of the Plan, or (iv) that is otherwise subject to a dispute that is being adjudicated, determined, or resolved in accordance with applicable nonbankruptcy law.

28. *Effective Date*: means the date selected by the Debtor which is the first Business Day on which (a) all of the conditions to the occurrence of the Effective Date specified herein have been satisfied or waived in accordance with the Plan and (b) no stay of the Confirmation Order is in effect.

29. *Eligible Voter*: means a holder of a Claim in an Impaired Class entitled to vote on the Plan.

30. *Employment Litigation Claims:* means any Claims that have been or may be asserted against the Debtor and its predecessor, Total Transportation Services, Inc., related to prepetition employment practices or use of independent operator drivers, including the Claims listed in the Plan Supplement and any similar Claims.

31. *Entity*: means an "entity" as such term is defined in section 101(15) of the Bankruptcy Code.

32. *Equity Interest*: means any "equity security" (as such term is defined in section 101(16) of the Bankruptcy Code) in the Debtor, whether or not transferable, and any option or right, contractual or otherwise, to acquire any such interest in the Debtor (including any equity performance or incentive awards) that existed immediately prior to the Effective Date, and any Claim against the Debtor subordinated or able to be subordinated pursuant to section 510(b) of the Bankruptcy Code.

33. *Estate*: means the estate the Debtor created in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

34. *Exchange Act*: means the Securities Exchange Act of 1934, as amended.

35. *Exculpated Parties*: means the Debtor, the Reorganized Debtor, the Committee and its members (in their capacity as members of the Committee) and all of their respective current and former officers, directors, members, affiliates, employees, advisors, attorneys, professionals, accountants, investment bankers, consultants, agents, successors, or other representatives (including their respective officers, directors, employees, members and professionals), solely in such capacities.

36. *Executory Contract*: means a contract to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

37. *Fee Claim*: means a Claim for Accrued Professional Compensation.

38. *Final Cash Collateral Order*: that certain Final Order (i) Authorizing Use of Cash Collateral, (ii) Granting Adequate Protection and (iii) Granting Related Relief [D.I. 152].

39. *Final Installment Date*: the date of the sixth (6th) installment payment made to holders of Claims in Classes 5 and 6, if any, as required by and pursuant to the schedule set by this Plan.

40. *Final Order*: means an order or judgment of the Court which has not been modified, amended, reversed, vacated, or stayed, and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or motion for new trial, stay, reargument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, stay, reargument, or rehearing thereof has been sought, such order or judgment of the Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, stay, reargument, or rehearing shall have been denied or resulted in no modification of

such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing shall have expired, as a result of which such order shall have become final in accordance with Bankruptcy Rule 8002; provided, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause an order not to be a Final Order.

41. *General Unsecured Cash:* means $500,000, plus (i) in the event that Class 5 rejects the Plan, the Trade Cash, or (ii) in the event Class 5 accepts the Plan, any amount by which the Trade Cash exceeds the Trade Claims.

42. *General Unsecured Claim*: means any Claim that is not Secured or entitled to priority under the Bankruptcy Code or an order of the Court, specifically including any Employment Litigation Claims, any prepetition claims related to non-residential real property leases, any Claim arising from the rejection of an Executory Contract or Unexpired Lease under section 365 of the Bankruptcy Code, and any deficiency claim of the Prepetition Junior Lender, but specifically excluding Trade Claims; provided, however, that the Prepetition Junior Lender will subordinate any distribution on its General Unsecured Claim to the payment of other General Unsecured Claims until such time that all such other General Unsecured Claims are paid in full, if ever.

43. *Governmental Unit*: has the meaning set forth in section 101(27) of the Bankruptcy Code.

44. *Impaired*: means, when used with respect to Claims or Equity Interests, Claims or Equity Interests that are "impaired" within the meaning of section 1124 of the Bankruptcy Code.

45. *Lien*: has the meaning set forth in section 101(37) of the Bankruptcy Code.

46. *New Board*: means the board of directors of the Reorganized Debtor to be constituted as of the Effective Date pursuant to the Plan and Confirmation Order.

47. *New Common Stock*: means the shares of common stock in the Reorganized Debtor issued and authorized pursuant to this Plan and the Reorganized Debtor's certificate of incorporation.

48. *Other Priority Claim*: means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than (i) an Administrative Claim, or (ii) a Priority Tax Claim.

49. *Other Secured Claim*: means any Claim that is Secured, other than the Prepetition Senior Lender Claims and Prepetition Junior Lender Secured Claims.

50. *Parent:* means Saybrook Logistics Acquisition, LLC.

51. *Person*: means any individual, corporation, partnership, limited liability company, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, Governmental Unit or any political subdivision thereof, or any other Entity.

52. *Petition Date*: means March 13, 2016, the date on which the Debtor commenced the Chapter 11 Case.

53. *Plan*: means this *Debtor's First Amended Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, together with all addenda, exhibits, schedules, or other attachments, if any, including the Plan Supplement, each of which is incorporated herein by reference, and as the same may be amended, modified, or supplemented from time to time in accordance with the terms herein.

54. *Plan Supplement*: means the compilation of documents and forms of documents, schedules, and exhibits to the Plan to be filed with the Court on notice to parties-in-interest, including the Employment Litigation Claims schedule, the schedule of assumed Executory Contracts and Unexpired Leases, the Reorganized Debtor Term Loan Note, the Class 5/6 Guarantee, and the Reorganized Debtor Organizational Documents. The Debtor shall file forms of the materials comprising the Plan Supplement no later than the Plan Supplement Filing Date.

55. *Plan Supplement Filing Date*: means the date that is five (5) days prior to the deadline to object to the confirmation of the Plan.

56. *Prepetition Junior Debt*: means all indebtedness or obligations under the Prepetition Junior Documents as of the Petition Date, including all principal under the Prepetition Junior Note, and all fees, costs, interest, and expenses as and when due and payable pursuant to the Prepetition Junior Documents.

57. *Prepetition Junior Documents*: means the Prepetition Junior Note, its related security agreement, and all other related documents.

58. *Prepetition Junior Lender*: means TTSI Financing, LLC.

59. *Prepetition Junior Lender Secured Claims*: means the Secured Claims of the Prepetition Junior Lender against the Debtor under the Prepetition Junior Documents.

60. *Prepetition Junior Note*: means that certain Second Amended and Restated Promissory Note, dated October 3, 2011 and restated July 15, 2014 by and between the Debtor (as successor by merger to Total Transportation Services, Inc.) and the Prepetition Junior Lender in the principal amount of $17,850,000, plus accrued and unpaid interest, fees, costs and other charges as of the Petition Date.

61. *Prepetition Secured Lenders*: means the Prepetition Senior Lender and the Prepetition Junior Lender.

62. *Prepetition Senior Assignment*: means that certain Assignment and Assumption Agreement, Amendment and Waiver dated March 1, 2016 between the Parent, the Prepetition Senior Lender, and the Debtor.

63. *Prepetition Senior Credit Agreement*: means that certain Credit Agreement dated May 12, 2014 (as amended or modified) by and among the Parent, the Prepetition Senior Lender, the Debtor and certain affiliates of the Debtor.

64. *Prepetition Senior Debt*: means all indebtedness or obligations under the Prepetition Senior Documents as of the Petition Date, including all principal under the Prepetition Senior Guaranty and all fees, costs, interest, and expenses as and when due and payable pursuant to the Prepetition Senior Documents.

65. *Prepetition Senior Documents*: means the Prepetition Senior Credit Agreement, the Prepetition Senior Guaranty, the Prepetition Senior Assignment and all other related documents.

66. *Prepetition Senior Guaranty*: means that certain Continuing Guaranty, dated March 1, 2016 between the Debtor and the Prepetition Senior Lender.

67. *Prepetition Senior Lender*: means California United Bank.

68. *Prepetition Senior Lender Claims*: means the Claims of the Prepetition Senior Lender against the Debtor under the Prepetition Senior Documents.

69. *Priority Tax Claim*: means any Claim that is entitled to priority in right of payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

70. *Professional*: means any professional employed or retained in the Chapter 11 Case pursuant to sections 327 or 328 of the Bankruptcy Code.

71. *Pro Rata*: means, with respect to (a) any Claim, the proportion that the amount of such Claim bears to the aggregate amount of all Claims (including Disputed Claims) in the applicable Class, unless the Plan provides otherwise.

72. *Released Parties*: means the Debtor, the Reorganized Debtor, the Parent, Port Solutions Holdings, LLC, the Prepetition Secured Lenders, the Committee and its members (in their capacity as members of the Committee), and all of their respective current and former officers, directors, members, employees, affiliates, parents, advisors, attorneys, professionals, accountants, investment bankers, consultants, agents, predecessors, or other representatives in their capacities as such (including their respective officers, directors, employees, members and professionals).

73. *Releasing Parties*: means each holder of a Claim that (i) affirmatively votes to accept the Plan and who does not mark its Ballot indicating its desire to opt out of the releases provided in Section VII.F of this Plan, (ii) is Unimpaired pursuant to the Plan and therefore is deemed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code, or (iii) receives a Ballot but rejects this Plan or abstains from voting on the Plan and does not mark

its Ballot indicating its desire to opt out of the releases provided in Section VII.F of this Plan; provided, however, that a holder of a Trade Claim or General Unsecured Claim who votes to reject the Plan and does not mark its Ballot(s) indicating its desire to opt out of the releases provided in Section VII.F of this Plan shall only be a "Releasing Party" in the event that holder's Class votes to accept the Plan. For the avoidance of doubt, "Releasing Party" shall not include holders of Claims or Equity Interests that are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

74. *Record Date*: means, for purposes of making distributions under the Plan, the Confirmation Date.

75. *Rejection Damage Claims*: means Claims for damages arising from the rejection of Executory Contracts or Unexpired Leases. Unless otherwise agreed to in writing by the Debtor, all Rejection Damage Claims shall be deemed Disputed Claims. Rejection Damages Claims are General Unsecured Claims.

76. *Reorganized Debtor*: means the Debtor, or any successor thereto by merger, consolidation, asset transfer, or otherwise, on and after the Effective Date.

77. *Reorganized Debtor Organizational Documents*: means the new company governance documents related to the Reorganized Debtor, including, but not limited to, articles of organization, operating agreements, shareholder agreements or other organizational documents, which shall be consistent with the provisions of this Plan and the Bankruptcy Code, and shall include (and only to the extent required by section 1123(a)(6) of the Bankruptcy Code), provisions prohibiting the issuance of non-voting equity securities. The Reorganized Debtor Organizational Documents shall be in substantially the form included in the Plan Supplement.

78. *Reorganized Debtor Term Loan Documents*: means the Reorganized Debtor Term Loan Note and related documents, as shall be filed with the Plan Supplement.

79. *Reorganized Debtor Term Loan Note*: means that certain Promissory Note, by and between the Reorganized Debtor and the Prepetition Junior Lender in a principal amount equal to the lesser of (i) $12.5 million, and (ii) 75% of the going concern value of the Collateral securing the Prepetition Junior Note plus any adequate protection claims and liens of the Prepetition Junior Lender under the Final Cash Collateral Order, as determined by the Bankruptcy Court, minus the Prepetition Senior Lender Claims.

80. *Restructuring-Related Action*: means any act taken or omitted to be taken in connection with, or arising from or relating in any way to, the restructuring of the Debtor or the Chapter 11 Case, including but not limited to, (a) the management and operation of the Debtor's business and the discharge of any duties under the Bankruptcy Code during the pendency of the Chapter 11 Case; (b) implementation of any of the transactions provided for, or contemplated in, this Plan or the Plan Supplement; (c) any action taken in the negotiation, formulation, development, proposal, solicitation, disclosure, Confirmation, or implementation of the Plan or Plan Supplement; (d) formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the necessary documentation of the Disclosure Statement and the Plan, the Plan Supplement, and any related contract, instrument,

release or other agreement or document created or entered into in connection therewith (including the solicitation of votes for the Plan and other actions taken in furtherance of confirmation and consummation of the Plan); (f) the administration of this Plan or the assets and property to be distributed pursuant to this Plan; (g) any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the bankruptcy restructuring of the Debtor; and (h) the preparation and filing of the Chapter 11 Case and the Schedules.

81. *Schedules*: means the schedules of assets and liabilities, statements of financial affairs, and lists of holders of Claims and Equity Interests, filed with the Court by the Debtor, including any amendments or supplements thereto.

82. *Secured*: means when referring to a Claim: (a) secured by a Lien on property in which any of the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) otherwise Allowed pursuant to the Plan as a Claim that is Secured.

83. *Securities Act*: means the Securities Act of 1933, as amended.

84. *Solicitation Parties*: means each of the following in its capacity as such: (a) the Debtor and (b) the Professionals of the Debtor.

85. *Solicitation Procedures*: means the procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan.

86. *Trade Cash*: means cash of $750,000, plus any amount of the General Unsecured Cash that is not utilized to pay General Unsecured Claims because Class 6 rejects the Plan; provided, however, that any such increase in the Trade Cash shall be reduced dollar for dollar by any fees and costs incurred by the Debtor in seeking cramdown of the Plan as to holders of Class 6 Claims, approval of the Plan over the objection of holders of Class 6 claims, or any other motions or adversary proceedings that are adverse to the Debtor brought by holders of Class 6 Claims, including motion to transfer venue [D.I. 188].

87. *Trade Claims*: means Claims held by current or former vendors or service providers to the Debtor, solely on account of goods or services provided to the Debtor prepetition, and specifically excluding claims arising from or related to litigation by vendors or service providers, Rejection Damages Claims, Employment Litigation Claims, Claims related to non-residential real property leases, and Claims related to credit cards.

88. *Unexpired Lease*: means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

89. *Unimpaired*: means any Class of Claims or Equity Interests that is not Impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code.

90. *U.S. Trustee*: means the United States Trustee for the District of Delaware.

91. *Voting Deadline*: means July 13, 2016 at 4:00 p.m. (prevailing Pacific Time) or such other later date established by the Debtor or the Court, which is the deadline for submitting Ballots to either accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code.

92. *Voting Record Date*: means the date the Bankruptcy Court approves the Disclosure Statement.

## B. Interpretation, Application of Definitions, and Rules of Construction.

Except as expressly provided herein, each capitalized term used in the Plan shall either have (i) the meaning ascribed to such term in Article I or (b) if such term is not defined in Article I, but such term is defined in the Bankruptcy Code or Bankruptcy Rules, the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be. Meanings of capitalized terms shall be equally applicable to both the singular and plural forms of such terms. The words "herein," "hereof," and "hereunder" and other words of similar import refer to the Plan as a whole (and, for the avoidance of doubt, the Plan Supplement) and not to any particular section or subsection in the Plan unless expressly provided otherwise. The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included. Captions and headings to articles, sections and exhibits are inserted for convenience of reference only, are not a part of this Plan, and shall not be used to interpret this Plan. The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to this Plan.

## C. Computation of Time.

Except as otherwise specifically provided in the Plan, in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

# ARTICLE II.
# ADMINISTRATIVE CLAIMS, FEE CLAIMS, AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Fee Claims, and Priority Tax Claims, each as described below, have not been classified and thus are excluded from the classes of Claims and Equity Interests set forth in Article III.

## A. Administrative Claims (Other Than Fee Claims).

Each holder of an Allowed Administrative Claim (other than an Administrative Claim that is a Fee Claim) as of the Effective Date shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Administrative Claim, (i) Cash in an amount equal to the amount of such Allowed Administrative Claim as soon as reasonably practicable after the later of (a) the Effective Date, if such Administrative Claim is Allowed as of the Effective Date or thirty (30) days after the date such Administrative Claim becomes an

Allowed Administrative Claim, if such Administrative Claim is Disputed as of, or following, the Effective Date, and (b) the date such Allowed Administrative Claim becomes due and payable in the ordinary course of business in accordance with the terms, and subject to the conditions, of any agreements governing, instruments evidencing, or other documents relating to, the applicable transaction giving rise to such Allowed Administrative Claim, if such Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of its business; or (ii) such other treatment as the Debtor and such holder shall have agreed in writing.

**B. Fee Claims.**

1. *Final Fee Applications*. The Bankruptcy Court shall determine the Allowed amounts of Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and any applicable orders of the Bankruptcy Court. The Reorganized Debtor shall pay Fee Claims in Cash in the amount Allowed by the Bankruptcy Court. All requests for compensation or reimbursement of Fee Claims shall be filed and served on the Reorganized Debtor, counsel to the Reorganized Debtor, counsel to the Committee, the U.S. Trustee and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Court, no later than forty-five (45) days after the Effective Date, unless otherwise agreed by the Reorganized Debtor. Holders of Fee Claims that are required to file and serve applications for final allowance of their Fee Claims that do not file and serve such applications by the required deadline shall be forever barred from asserting such Claims against the Debtor, Reorganized Debtor, or their respective assets, and such Fee Claims shall be deemed discharged as of the Effective Date. Objections to any Fee Claims must be filed and served on the Reorganized Debtor, counsel to the Reorganized Debtor, counsel to the Committee, the U.S. Trustee and the requesting party no later than fourteen (14) days after the filing of the final applications for compensation or reimbursement (unless otherwise agreed by the party requesting compensation of a Fee Claim).

2. *Post-Effective Date Fees and Expenses*. The Reorganized Debtor shall pay in Cash the reasonable legal, professional, or other fees and expenses incurred by the Reorganized Debtor's Professionals on and after the Effective Date, in the ordinary course of business, and without any further notice to or action, order, or approval of the Court. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and Professionals may be employed and paid in the ordinary course of business without any further notice to, or action, order, or approval of, the Court.

**C. Priority Tax Claims.**

Each holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive, as determined by the Debtor, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Priority Tax Claim (i) payment in full in Cash, payable in equal Cash installments made on a quarterly basis in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, over a period not to exceed five (5) years following the Petition Date, plus statutory interest on any outstanding balance from the Effective Date, calculated at the prevailing rate under applicable nonbankruptcy law for each taxing authority and to the extent provided for by section 511 of the Bankruptcy Code, and in a manner

not less favorable than the most favored nonpriority General Unsecured Claim provided for by the Plan (other than cash payments made to a class of creditors pursuant to section 1122(b) of the Bankruptcy Code); or (ii) such other treatment as may be agreed upon by such holder and the Debtor or otherwise determined upon a Final Order of the Court.

**D. U.S. Trustee Fees.**

Notwithstanding anything to the contrary contained herein, on the Effective Date, the Debtor shall pay, in full, in Cash, any fees due and owing to the U.S. Trustee at the time of Confirmation. On and after the Effective Date, the Reorganized Debtor shall be responsible for filing required post-confirmation reports and paying quarterly fees due to the U.S. Trustee for the Reorganized Debtor.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

**A. Classification of Claims and Equity Interests.**

Except for those Claims addressed in Article II, all Claims and Equity Interests are placed in the Classes set forth below. A Claim or Equity Interest is placed in a particular Class solely to the extent that the Claim or Equity Interest falls within the description of that Class, and the portion of a Claim or Equity Interest which does not fall within such description shall be classified in another Class or Classes to the extent that such portion falls within the description of such other Class or Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan solely to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled before the Effective Date.

**B. Record Date.**

As of the close of business on the Record Date, the claims register (for Claims) and transfer ledger (for Equity Interests) shall be closed, and there shall be no further changes in the record holders of any Claims or Equity Interests. The Reorganized Debtor shall have no obligation to, but may recognize in its sole discretion any transfer of any Claims or Equity Interests occurring after the Record Date. The Reorganized Debtor shall be entitled to recognize and deal for purposes under the Plan with only those record holders stated on the claims register (for Claims) and transfer ledgers (for Equity Interests) as of the close of business on the Record Date.

**C. Summary of Classification and Class Identification.**

Below is a chart identifying Classes of Claims and Equity Interests against the Debtor, a description of whether each Class is Impaired, and each Class’ voting rights with respect to the Plan.

| Class | Claim or Equity Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Prepetition Senior Lender Claims | Impaired | Entitled to Vote |
| 2 | Prepetition Junior Lender Secured Claims | Impaired | Entitled to Vote |
| 3 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 4 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 5 | Trade Claims | Impaired | Entitled to Vote |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Equity Interests | Impaired | Deemed to Reject |

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied, for the purposes of Confirmation, by acceptance of the Plan by an Impaired Class of Claims against the Debtor; provided, however, that in the event no holder of a Claim with respect to a specific voting Class timely submits a Ballot indicating acceptance or rejection of the Plan, such Class will be deemed to have accepted the Plan. The Debtor hereby requests that the Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Equity Interests.

**D. Treatment of Classified Claims and Equity Interests.**

1. *Class 1 - Prepetition Senior Lender Claims*.

*(a)* *Classification*: Class 1 consists of Prepetition Senior Lender Claims.

*(b)* *Allowance*: The Prepetition Senior Lender Claims are fully secured, and the Prepetition Senior Lender is entitled to interest on such Claims, together with reimbursement of all fees and costs provided for under the Prepetition Senior Documents. As of the Effective Date, the Prepetition Senior Lender Claims shall be deemed Allowed in the amount of $2 million, plus accrued and unpaid interest, fees, costs and other charges.

*(c)* *Treatment*: Except to the extent that the holder of the Prepetition Senior Lender Claims and the Debtor agree in writing to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Prepetition Senior Lender Claim, the holder of the Allowed Prepetition Senior Lender Claims shall own and hold the Prepetition Senior Guaranty, as a guaranty of obligations under the Prepetition Senior Debt, upon which interest shall be payable monthly by the Debtor or Reorganized Debtor pursuant to the Prepetition Senior Documents. Unless otherwise agreed by the Debtor or Reorganized Debtor and the Prepetition Senior Lender, the Prepetition Senior Lender Claims will be paid in full on or before the extended maturity date of December 15, 2017 in accordance with the Prepetition Senior Documents. To the extent the Prepetition Senior Lender Claims are not paid as set forth in the Prepetition Senior Documents, as modified by Confirmation Order which is a Final Order, the Prepetition Senior Lender shall be entitled to interest at the default rate of interest set forth in the Prepetition Senior Documents.

*(d)* *Voting*: Class 1 is Impaired by the Plan, and the holder of the Class 1 Prepetition Senior Lender Claims is entitled vote to accept or reject the Plan.

2. *Class 2 - Prepetition Junior Lender Secured Claims*.

*(a)* *Classification*: Class 2 consists of Prepetition Junior Lender Secured Claims.

*(b)* *Allowance*: The Prepetition Junior Lender Secured Claims shall be Allowed Secured Claims in the lesser of (i) $24 million and (ii) the going concern value of the Collateral securing the Prepetition Junior Note plus any adequate protection claims and liens of the Prepetition Junior Lender under the Final Cash Collateral Order, as determined by the Bankruptcy Court, minus the Prepetition Senior Lender Claims.

*(a)* *Treatment*: Except to the extent that the holder of the Prepetition Junior Lender Secured Claims and the Debtor agree in writing to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, the Prepetition Junior Lender Secured Claims, the holder of the Allowed Prepetition Junior Lender Secured Claims shall own and hold (i) the Prepetition Junior Debt, as amended and restated in the Reorganized Debtor Term Loan Documents, which shall provide, among other things, that no payment shall be made on the Allowed Prepetition Junior Lender Secured Claims until the Prepetition Senior Lender Claims have been indefeasibly paid in full, and (ii) 100% of the New Common Stock issued on the Effective Date.

*(b)* *Voting*: Class 2 is Impaired by the Plan, and the holder of the Class 2 Prepetition Junior Lender Secured Claims is entitled vote to accept or reject the Plan.

3. *Class 3 - Other Priority Claims*.

*(a)* *Classification*: Class 3 consists of Other Priority Claims.

*(b)* *Treatment*: Except to the extent that a holder of an Allowed Other Priority Claim and the Debtor agree in writing to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Other Priority Claim, each holder of an Allowed Other Priority Claim shall receive (i) payment in Cash in an amount equal to such Allowed Other Priority Claim as soon as practicable after the later of (a) the Effective Date and (b) thirty (30) days after the date when such Other Priority Claim becomes an Allowed Other Priority Claim or (ii) such other treatment, as determined by the Debtor, that will render it Unimpaired pursuant to section 1124 of the Bankruptcy Code.

*(c)* *Voting*: Class 3 is Unimpaired by the Plan, and each holder of a Class 3 Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Class 3 Other Priority Claims are not entitled to vote to accept or reject the Plan.

4. *Class 4 - Other Secured Claims*.

*(a)* *Classification*: Class 4 consists of Other Secured Claims.

*(b)* *Treatment*: Except to the extent that a holder of an Allowed Other Secured Claim and the Debtor agree in writing to less favorable treatment, in full and final

satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Other Secured Claim, each holder of an Allowed Other Secured Claim shall receive (i) Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim, if such interest is required to be paid pursuant to sections 506(b) or 1129(a)(9) of the Bankruptcy Code, as soon as practicable after the later of (a) the Effective Date, and (b) thirty (30) days after the date such Other Secured Claim becomes an Allowed Other Secured Claim, (ii) the Collateral securing its Allowed Other Secured Claim as soon as practicable after the later of (a) the Effective Date and (b) thirty (30) days after the date such Other Secured Claim becomes an Allowed Other Secured Claim, or (iii) such other treatment, as determined by the Debtor, that will render it Unimpaired pursuant to section 1124 of the Bankruptcy Code.

*(c)* *Voting*: Class 4 is Unimpaired by the Plan, and each holder of a Class 4 Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Class 4 Other Secured Claims are not entitled to vote to accept or reject the Plan.

5. *Class 5 - Trade Claims*.

*(a)* *Classification*: Class 5 consists of Trade Claims.

*(b)* *Treatment*: If the holders of Class 5 Trade Claims vote as a Class to accept the Plan, except to the extent that a holder of an Allowed Trade Claim and the Debtor agree in writing to less favorable treatment, in full and final satisfaction, settlement, release and discharge of and in exchange for such Allowed Trade Claim, each holder of an Allowed Trade Claim shall receive its Pro Rata share of the Trade Cash, in six (6) equal installments every six (6) months with the first installment to be made on (i) the last business day of the sixth month following the Effective Date for all then Allowed Trade Claims, or (ii) to the extent that a Trade Claim becomes an Allowed Trade Claim following such time, the date of the next six month installment payment, at which time the Debtor shall pay the holder of such Allowed Trade Claim all amounts withheld at the time of any earlier installment payments related to such Claim; provided, however that no holder of an Allowed Trade Claim shall receive more than the allowed amount of its Claim on account of its Allowed Trade Claim. The distributions under this section will be guaranteed under the terms of the Class 5/6 Guarantee. If Class 5 accepts the Plan, holders of Class 5 Trade Claims that vote to accept the Plan shall also be released from any Avoidance Actions by the Debtor as of the Effective Date notwithstanding anything to the contrary in this Plan. Holders of Allowed Trade Claims must agree to grant the releases and covenants set forth in Section VII.F of this Plan to receive the foregoing treatment.

*(c)* *Voting*: Class 5 is Impaired by the Plan, and each holder of a Class 5 Trade Claim is entitled to vote to accept or reject the Plan.

6. *Class 6 – General Unsecured Claims*.

*(a)* *Classification*: Class 6 consists of General Unsecured Claims.

*(b)* *Treatment*: If the holders of Class 6 General Unsecured Claims vote as a Class to accept the Plan, except to the extent that a holder of an Allowed General

Unsecured Claim and the Debtor agree in writing to less favorable treatment, in full and final satisfaction, settlement, release and discharge of and in exchange for such Allowed General Unsecured Claim, each holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the General Unsecured Cash, in six (6) equal installments every six (6) months with the first installment to be made on (i) the last business day of the sixth month following the Effective Date for all then Allowed General Unsecured Claims, or (ii) to the extent that a General Unsecured Claim becomes an Allowed General Unsecured Claim following such time, the date of the next six month installment payment, at which time the Debtor shall pay the holder of such Allowed General Unsecured Claim all amounts withheld at the time of any earlier installment payments related to such Claim; provided, however that no holder of an Allowed General Unsecured Claim shall receive more than the allowed amount of its Claim on account of its Allowed General Unsecured Claim. The Prepetition Junior Lender will subordinate any distribution on its General Unsecured Claim to the payment of other General Unsecured Claims until such time that all such other General Unsecured Claims are paid in full, if ever. The distributions under this section will be guaranteed under the terms of the Class 5/6 Guarantee. If Class 6 accepts the Plan, holders of Class 6 General Unsecured Claims that vote to accept the Plan shall also be released from any Avoidance Actions by the Debtor as of the Effective Date notwithstanding anything to the contrary in this Plan. Holders of Allowed General Unsecured Claims must agree to grant the releases and covenants set forth in Section VII.F of this Plan to receive the foregoing treatment.

*(c)* Voting: Class 6 is Impaired by the Plan, and each holder of a Class 6 General Unsecured Claim is entitled to vote to accept or reject the Plan.

7. *Class 7 –Equity Interests*.

*(a)* Classification: Class 7 consists of Equity Interests.

*(b)* Treatment: On the Effective Date, all existing Equity Interests in the Debtor shall be cancelled, extinguished and discharged and the holders thereof shall receive no distribution on account of such Equity Interests.

*(c)* Voting: Class 7 is Impaired and holders of Class 7 Equity Interests shall receive no distributions under the Plan. Therefore, holders of Class 7 Equity Interests are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

## E. Special Provision Regarding Unimpaired Claims.

Except as otherwise specifically provided in this Plan, nothing herein shall be deemed to affect, diminish, or impair the Debtor's or the Reorganized Debtor's rights and defenses, both legal and equitable, with respect to any Unimpaired Claim, including legal and equitable defenses to setoffs or recoupment against Unimpaired Claims. Except as otherwise specifically provided in this Plan, nothing herein shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense which the Debtor had immediately prior to the Petition Date against, or with respect to, any Claim left Unimpaired by this Plan. Except as otherwise specifically provided in this Plan, the Reorganized Debtor shall have, retain, reserve, and be entitled to assert, all such Claims, Causes

of Action, rights of setoff, and other legal or equitable defenses which it had immediately prior to the Petition Date fully as if the Chapter 11 Case had not been commenced, and all of the Debtor's legal and equitable rights with respect to any Claim left Unimpaired by this Plan may be asserted by the Reorganized Debtor after the Confirmation Date and the Effective Date to the same extent as if the Chapter 11 Case had not been commenced.

**F. Nonconsensual Confirmation.**

The Debtor intends to request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that has not accepted or is deemed to have rejected the Plan pursuant to section 1126 of the Bankruptcy Code.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

**A. Operations Between the Confirmation Date and Effective Date**

During the period from the Confirmation Date through and until the Effective Date, the Debtor may continue to operate its business as a debtor in possession, subject to all applicable orders of the Bankruptcy Court.

**B. Committee Dissolution**

On the Effective Date, the Committee shall dissolve automatically and its members, Professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Case and under the Bankruptcy Code; provided that such parties shall continue to be bound by any obligations arising under confidentiality agreements or joint defense/common interest agreements (whether formal or informal) entered during the Chapter 11 Case, which shall remain in full force and effect according to their terms, and provided further that the Committee's Professionals shall continue to have a right to be heard with respect to their respective applications for Fee Claims.

**C. New Common Stock**

1. *Stock Issuance*. On the Effective Date: (i) the existing Equity Interests in the Debtor will be cancelled, extinguished and discharged; and (ii) the New Common Stock will be issued and, as soon as practicable thereafter, distributed, as provided for in Article III of this Plan and the Reorganized Debtor Organizational Documents. The issuance by the Reorganized Debtor of the New Common Stock is authorized without the need for any further corporate action and without any further action by any holder of a Claim or Equity Interest.

2. *Exemption from Registration*. The offering, issuance, and distribution of the New Common Stock shall be exempt from the registration requirements of section 5 of the Securities Act under section 1145(a) of the Bankruptcy Code.

3. *Reporting Requirements*. On the Effective Date, none of the New Common Stock will be listed on a national securities exchange, the Reorganized Debtor will not

be a reporting company under the Securities Exchange Act, the Reorganized Debtor shall not be required to and will not file reports with the Securities and Exchange Commission or any other entity or party, other than required reports in this Chapter 11 Case.

**D. Continued Corporate Existence and Vesting of Assets.**

Except as otherwise provided herein: (i) the Reorganized Debtor will exist after the Effective Date as a separate legal entity, with all of the powers of such a legal entity under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger, dissolution or otherwise) under applicable law; and (ii) on the Effective Date, all property of the Debtor's Estate, and any property acquired by the Debtor or Reorganized Debtor under the Plan, will vest in such Reorganized Debtor free and clear of all Claims, Liens, charges, other encumbrances, Equity Interests, and other interests, except for the Liens and Claims established under the Plan.

On and after the Effective Date, the Reorganized Debtor will operate its business and use, acquire, and dispose of property and compromise or settle any claims without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, subject only to those restrictions expressly imposed by the Plan or the Confirmation Order as well as the documents and instruments executed and delivered in connection therewith, including the documents, exhibits, instruments, and other materials comprising the Plan Supplement. Without limiting the foregoing, the Reorganized Debtor may pay the charges that it incurs from and after the Effective Date for fees, disbursements, expenses, or related support services (including fees relating to the preparation of Professional fee applications) without application to, or the approval of, the Court.

**E. Preservation of Causes of Action.**

In accordance with section 1123(b) of the Bankruptcy Code, and except as expressly provided herein (including Articles III, IV and VII), the Reorganized Debtor shall retain all Causes of Action. Nothing contained in this Plan or the Confirmation Order shall be deemed a waiver or relinquishment of any claim, Cause of Action, right of setoff, or other legal or equitable defense of the Debtor that is not specifically waived or relinquished by this Plan. The Reorganized Debtor shall have, retain, reserve, and be entitled to assert, all such claims, Causes of Action, rights of setoff, and other legal or equitable defenses that the Debtor had immediately before the Petition Date as fully as if the Chapter 11 Case had not been commenced, and all of the Reorganized Debtor's legal and equitable rights respecting any claim that is not specifically waived or relinquished by this Plan may be asserted after the Effective Date to the same extent as if the Chapter 11 Case had not been commenced. No Person may rely on the absence of a specific reference in the Plan, Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor or the Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action against such Person. The Debtor or the Reorganized Debtor, as applicable, expressly reserves all rights to prosecute any and all Causes of Action against any Person, in accordance with the Plan. From and after the Effective Date, the Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release,

withdraw, or litigate to judgment any Cause of Action and to decline to do any of the foregoing without further notice to or action, order, or approval of the Court. The Reorganized Debtor is deemed a representative of the Estate for the purpose of prosecuting any Claim or Cause of Action and any objections to Claims pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

**F. Claims Incurred After the Effective Date.**

Claims incurred by the Reorganized Debtor after the Effective Date may be paid by the Reorganized Debtor in the ordinary course of business and without application for or Court approval, subject to any agreements with such holders of a Claim and applicable law.

**G. Corporate Action.**

Each of the matters provided for by the Plan involving the corporate structure of the Debtor or corporate or related actions to be taken by or required of the Reorganized Debtor, whether taken prior to or as of the Effective Date, shall be deemed authorized and approved in all respects without the need for any further corporate action and without any further action by the Debtor or the Reorganized Debtor, as applicable.

## ARTICLE V.
## PROVISIONS REGARDING CORPORATE GOVERNANCE OF THE REORGANIZED DEBTOR

**A. Organizational Documents.**

On or immediately before the Effective Date, the Reorganized Debtor Organization Documents will be deemed to have been adopted and will become effective on the Effective Date. The Reorganized Debtor Organization Documents shall prohibit the issuance of nonvoting equity securities only so long as, and to the extent that, the issuance of nonvoting equity securities is prohibited by the Bankruptcy Code.

**B. Appointment of Officers and Directors.**

As of the Effective Date, the term of the current board of directors of the Debtor shall expire without further action by any Person. The board of directors of the Reorganized Debtor shall consist of the individuals identified in the Plan Supplement.

From and after the Effective Date, the existing officers shall retain their offices unless otherwise provided for in the Plan Supplement.

**C. Powers of Officers.**

The officers of the Reorganized Debtor shall have the power to enter into or execute any documents or agreements that they deem reasonable and appropriate to effectuate the terms of the Plan.

**D. Indemnification of Directors, Officers, and Management.**

Notwithstanding any other provisions of the Plan, from and after the Effective Date, indemnification obligations owed by the Debtor or the Reorganized Debtor to directors, officers, or other management employees of the Debtor who served or were employed by the Debtor before, on or after the Petition Date, to the extent provided in the corporate governance documents or similar constituent documents, by statutory law or by written agreement, policies or procedures of the Debtor, will be deemed to be, and treated as though they are, executory contracts that are assumed pursuant to the Plan and section 365 of the Bankruptcy Code. All such indemnification obligations shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged, irrespective of whether indemnification, defense, reimbursement or limitation is owed in connection with an event occurring before, on, or after the Petition Date.

## ARTICLE VI.
## CONFIRMATION OF THE PLAN

**A. Conditions to Confirmation.**

The following are conditions to the entry of the Confirmation Order:

1. The Court shall have approved the Disclosure Statement.

2. The Confirmation Order shall be reasonably satisfactory to the Debtor.

## ARTICLE VII.
## SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

**A. General Settlement of Claims and Interests.**

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Equity Interests and controversies relating to the contractual, legal, and subordination rights that a holder of a Claim may have with respect to any Allowed Claim, or any distribution to be made on account of such Allowed Claim.

The entry of the Confirmation Order shall constitute the Court's approval of each of the compromises and settlements embodied in the Plan, and the Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, its Estate, creditors, and other parties-in-interest, and are fair, equitable, and within the range of reasonableness. The Plan and the Confirmation Order shall have res judicata, collateral estoppel, and estoppel (judicial, equitable, or otherwise) effect with respect to all matters provided for, or resolved pursuant to, the Plan or the Confirmation Order, including the release, injunction, exculpation, discharge, and compromise provisions contained in the Plan or the Confirmation Order. The provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.

**B. Subordination of Claims**

The allowance, classification and treatment of all Allowed Claims and Equity Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto. However, the Debtor reserves the right to reclassify any Allowed Claim or Equity Interest in accordance with any contractual, legal or equitable subordination relating thereto, unless otherwise provided in a settlement agreement concerning such Allowed Claim.

**C. Discharge of the Debtor.**

**Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the Class 5/6 Guarantee, or in any contract, instrument, or other agreement or document created pursuant to the Plan: (a) the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release of all Claims, Equity Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Equity Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against and Equity Interests in, the Debtor, the Reorganized Debtor or any of their assets, properties or Estate, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, Equity Interests and Causes of Action, including demands, liabilities and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date; (b) the Plan shall bind all holders of Claims and Equity Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Equity Interests shall be satisfied, discharged and released in full, and the Debtor's liability with respect thereto, shall be extinguished completely, including debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not: (i) a proof of Claim or Equity Interest based upon such debt, right, or Equity Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Equity Interest based upon such debt, right or Equity Interest is Allowed; or (iii) the holder of such a Claim or Equity Interest has accepted the Plan or is entitled to receive a distribution hereunder; and (d) all Entities shall be precluded from ever asserting against the Debtor, the Debtor's Estate, the Reorganized Debtor, their successors and assigns, and their assets and properties any Claims and Equity Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date. Any default by the Debtor with respect to any Claim or Equity Interest that existed immediately before or on account of the filing of the Chapter 11 Case shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Equity Interests subject to the Effective Date occurring.**

**D. Release of Liens.**

**Except as otherwise expressly provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, and other security interests against any property of the Debtor's Estate shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, and other security interests shall revert to the Reorganized Debtor and its successors and assigns.**

**E. Releases by the Debtor.**

**Except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties to facilitate the reorganization of the Debtor, the implementation of the restructuring contemplated by the Plan and the compromises contained herein, on and after the Effective Date, the Released Parties are hereby released and discharged by the Debtor, the Reorganized Debtor and the Estate, including any successor to the Debtor or any Estate representative from all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereafter arising, in law, at equity or otherwise, whether for indemnification, tort, contract, violations of federal or state securities laws or otherwise, including those that the Debtor, the Reorganized Debtor or the Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest or any other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtor and its Estate, the conduct of the business of the Debtor, the Chapter 11 Case, the purchase, sale or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the restructuring of Claims and Equity Interests prior to or during the Chapter 11 Case, the negotiation, formulation or preparation of the Plan, the Plan Supplement, the Disclosure Statement, or, in each case, related agreements, instruments or other documents, any action or omission as an officer, manager, member, representative, fiduciary, controlling person, affiliate or responsible party, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of the Plan, other than (a) claims or liabilities arising out of or relating to any act or omission of a Released Party to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, bad faith, fraud or a criminal act, and (b) obligations owed to the Debtor by its affiliates for intercompany transfers.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this Section VII.E, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a**

**good faith settlement and compromise of the claims released by this Section VII.E; (c) in the best interests of the Debtor, its Estate and all holders of Claims and Equity Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any Entity granting a release under this Section VII.E from asserting any claim or Cause of Action released by this Section VII.E.**

**F. Releases by Certain Parties.**

**Notwithstanding anything contained herein to the contrary, as of the Final Installment Date, and to the fullest extent authorized by applicable law, the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, remedies, Causes of Action, rights of setoff, other rights, and liabilities whatsoever, whether for tort, contract, violations of federal or state securities laws, avoidance actions, including any derivative claims, asserted or that could possibly have been asserted directly or indirectly on behalf of the Releasing Parties or their affiliates, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, and any and all Causes of Action asserted or that could possibly have been asserted on behalf of the Releasing Parties or their affiliates (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest or other Entity, based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtor, the Reorganized Debtor, its Estate or affiliates, the conduct of the Debtor's businesses, the formulation, preparation, solicitation, dissemination, negotiation, or filing the Disclosure Statement, Plan Supplement, or the Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with or pursuant to the Disclosure Statement, Plan Supplement, or the Plan, the filing and prosecution of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of consummation of the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any of the Debtor, its Estate or affiliates, on the one hand, and any Released Party, on the other hand, prepetition contracts and agreements with the Debtor, or any other act or omission, transaction, agreement, event, or other occurrence taking place before the Effective Date; provided that to the extent that a claim or Cause of Action is determined by a Final Order to have resulted from fraud, gross negligence or willful misconduct of a Released Party, such claim or Cause of Action shall not be so released against such Released Party. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any obligations arising on or after the Effective Date.**

**Notwithstanding anything contained herein to the contrary, as of the Effective Date and continuing through the Final Installment Date at which time the above release is effective, to the fullest extent authorized by applicable law, as long as the Debtor makes timely payments to the Releasing Parties pursuant to the Plan, the Releasing Parties and the Released Parties shall be deemed to covenant and agree that they, and any other persons or entities acting or purporting to act at their direction or on their behalf, shall not**

**take any action or by inaction permit an action that is contrary to the release set forth above as if such release was effective on the Effective Date. The deadline(s) for all Releasing Parties, or any persons or entities acting at their direction or on their behalf, to commence any action that such parties covenant and agree not to pursue in accordance with the foregoing, shall be tolled and/or extended until and through the Final Installment Date.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release and covenant set forth in this Section VII.F, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the claims released by this Section VII.F; (c) in the best interests of the Debtor, its Estate and all holders of Claims and Equity Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any Entity granting a release and covenant under this Section VII.F from asserting any claim or Cause of Action in contravention of this Section VII.F.**

**G. Exculpation.**

**Notwithstanding anything herein to the contrary and to the extent permitted by applicable law, the Exculpated Parties shall neither have nor incur any liability to any Entity for any Restructuring-Related Action; provided that nothing in the foregoing "Exculpation" shall exculpate any Entity from any liability resulting from any act or omission that is determined by Final Order to have constituted fraud, willful misconduct, gross negligence, or criminal conduct; provided that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement.**

**Notwithstanding anything herein to the contrary, as of the Effective Date, pursuant to section 1125(e) of the Bankruptcy Code, the Solicitation Parties upon appropriate findings of the Bankruptcy Court will be deemed to have solicited acceptance of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the Plan of a Reorganized Debtor, and shall not be liable to any Entity on account of such solicitation or participation.**

**In addition to the protections afforded in this Article VII.G to the Exculpated Parties, and not in any way reducing or limiting the application of such protections, the Bankruptcy Court retains exclusive jurisdiction over any and all Causes of Action asserted against any Debtor for any Restructuring-Related Action that are not otherwise exculpated or enjoined by this Plan.**

**H. Injunction.**

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR EQUITY INTERESTS THAT HAVE BEEN RELEASED OR DISCHARGED PURSUANT TO THIS PLAN OR ARE SUBJECT TO EXCULPATION PURSUANT TO THIS ARTICLE VII ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTOR, THE REORGANIZED DEBTOR, THE RELEASED PARTIES, OR THE EXCULPATED PARTIES: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, CAUSES OF ACTION, OR EQUITY INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH RELEASED PARTIES OR EXCULPATED PARTIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, CAUSES OF ACTION, OR EQUITY INTERESTS; (3) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH RELEASED PARTIES OR EXCULPATED PARTIES OR AGAINST THE PROPERTY OR ESTATE OF SUCH RELEASED PARTIES OR EXCULPATED PARTIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, CAUSES OF ACTION, OR EQUITY INTERESTS; (4) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTOR OR REORGANIZED DEBTOR OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DEBTOR OR REORGANIZED DEBTOR ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, CAUSES OF ACTION, OR EQUITY INTERESTS; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, CAUSES OF ACTION, OR EQUITY INTERESTS RELEASED, SETTLED, OR DISCHARGED PURSUANT TO THE PLAN OR CONFIRMATION ORDER. ANY ACTION TAKEN IN CONTRAVENTION OF THIS INJUNCTION SHALL BE DEEMED NULL AND VOID.

**I. Limitations on Exculpations and Releases.**

**Notwithstanding anything contained herein to the contrary, the releases and exculpation contained herein do not release any obligations of any party arising under this Plan or any document, instrument or agreement (including those set forth in the documents related to the Plan Supplement) executed to implement the Plan.**

**J. Preservation of Insurance.**

The Debtor's discharge, exculpation and release, and the exculpation and release in favor of the Exculpated Parties, as provided herein, shall not, except as necessary to be consistent with this Plan, diminish or impair the enforceability of any insurance policy that may

provide coverage for claims against the Debtor, the Reorganized Debtor and their current and former directors and officers, or any other Person.

## ARTICLE VIII.
## CLAIMS OBJECTIONS AND DISTRIBUTIONS UNDER THE PLAN

### A. Claims Objections.

1. *Objections to Claims*. After the Effective Date, the Reorganized Debtor shall have and shall retain any and all rights and defenses either it or the Debtor may have with respect to any Claim, and shall have the exclusive authority to file objections and to settle, compromise, withdraw or litigate to judgment objections to Claims (except those Allowed by, or released by, this Plan, the Confirmation Order or other Final Order). The Reorganized Debtor shall file objections to any Disputed Claims in accordance with the Bankruptcy Rules on or before the Claims Objection Deadline, as the same may be extended pursuant to the terms of this Plan or order of the Bankruptcy Court.

### B. Allowed Claims and Equity Interests.

1. *Claim Amendments.* After the Confirmation Date, a Claim may not be filed or amended without the authorization of the Bankruptcy Court and, even with such Bankruptcy Court authorization, may be amended by the holder of such Claim solely to decrease, but not to increase, unless otherwise provided by the Bankruptcy Court, the amount, number or priority.

2. *Delivery of Distributions in General*. Except as otherwise provided herein, distributions under the Plan shall be made by the Reorganized Debtor to the holders of Allowed Claims in all Classes for which a distribution is provided in this Plan at the addresses set forth on the Schedules or in the Debtor's books and records, as applicable, unless such addresses are superseded by proofs of Claim or transfers of Claim filed pursuant to Bankruptcy Rule 3001 by the Record Date (or at the last known addresses of such holders if the Debtor or the Reorganized Debtor has been notified in writing of a change of address). The Reorganized Debtor shall have the authority, in its sole discretion, to enter into agreements with a third-party distribution agent to facilitate the distributions required hereunder.

3. *Distribution of Cash*. Any payment of Cash by the Reorganized Debtor pursuant to the Plan shall be made in U.S. dollars and at the option and in the sole discretion of the Reorganized Debtor by (i) a check drawn on, or (ii) wire transfer from, a bank selected by the Reorganized Debtor.

4. *No Fractional or De Minimis Distributions*. Notwithstanding anything contained herein to the contrary, payments of fractional dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding down of such fractions. The Reorganized Debtor shall not be required to make any payment of less than $20.00 on any distribution.

5. *Saturdays, Sundays, or Legal Holidays*. If any payment, distribution or act under the Plan is required to be made or performed on a date that is not a Business Day, then

the making of such payment or the performance of such act may be completed on the next succeeding Business Day, and shall be deemed to have been completed as of the required date.

6. *Distributions to Holders of Claims:*

*(a)* *Initial Distribution to Claims Allowed as of the Effective Date*. On or as soon as reasonably practicable after the Effective Date, or as otherwise expressly set forth in the Plan, the Reorganized Debtor shall distribute Cash or Collateral, as the case may be, to the holders of Allowed Claims as contemplated herein.

*(b)* *Claims Allowed after the Effective Date*. Each holder of a Claim that becomes an Allowed Claim subsequent to the Effective Date shall receive the distribution to which such holder of an Allowed Claim is entitled as set forth in Article III, and distributions to such holder shall be made in accordance with the provisions of this Plan. As soon as practicable after the date that the Claim becomes an Allowed Claim, the Reorganized Debtor shall provide to the holder of such Claim the distribution (if any) to which such holder is entitled under this Plan as of the Effective Date, without any interest to be paid on account of such Claim.

7. *Undeliverable Distributions:*

*(a)* *Holding of Undeliverable Distributions*. If any distribution to a holder of an Allowed Claim is returned to the Reorganized Debtor as undeliverable, no further distributions shall be made to such holder unless and until the Reorganized Debtor is notified in writing of such holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such holder as soon as practicable. Undeliverable distributions shall remain in the possession of the Reorganized Debtor until such time as a distribution becomes deliverable, and shall not be supplemented with any interest, dividends or other accruals of any kind.

*(b)* *Failure to Claim Undeliverable Distributions*. Any holder of an Allowed Claim that does not provide the necessary information (as set forth in subsection (a) of this Section) assert a Claim pursuant to this Plan for an undeliverable distribution within one hundred eighty (180) days after the distribution is distributed shall be deemed to have waived its Claim for such undeliverable distribution and shall be forever barred from asserting any such Claim against the Reorganized Debtor or its property. In such cases, notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary, any Cash held for distribution on account of such undeliverable distribution shall be property of the Reorganized Debtor, free of any restrictions thereon. Nothing contained in this Plan shall require the Debtor, the Reorganized Debtor, or a distribution agent to attempt to locate any holder of an Allowed Claim.

8. *Compliance with Tax Requirements*. In connection with the Plan, to the extent applicable, the Debtor or the Reorganized Debtor, as applicable, shall comply with all tax withholding, payment and information reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding, payment and information reporting requirement. The Reorganized Debtor shall withhold all amounts required by law to be withheld from payments made under this Plan. Any

amounts so withheld from any payment made under the Plan shall be deemed paid to the holder of the Allowed Claim subject to withholding. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under this Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed on such holder by any Governmental Unit on account of such distribution, including income withholding, and other tax obligations, on account of such distribution. The Reorganized Debtor has the right, but not the obligation, not to make a distribution until such holder has made arrangements satisfactory to the Reorganized Debtor or any disbursing agent for payment and satisfaction of any withholding tax obligations. If the Reorganized Debtor fails to withhold with respect to any such holder's distribution, and is later held liable for the amount of such withholding, the holder shall reimburse the Reorganized Debtor. Notwithstanding any provision in this Plan to the contrary, the Debtor, Reorganized Debtor or any distribution agent shall be authorized to take all actions necessary or appropriate to comply with such withholding, payment, and information reporting requirements, including liquidating a portion of the distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions and determine any withholding thereon, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtor, Reorganized Debtor or any distribution agent may require, as a condition to the receipt of a distribution, that the holder complete the appropriate Internal Revenue Service Form W-8 or Form W-9, as applicable to each holder. If the holder fails to comply with such a request within one hundred eighty (180) days, such distribution shall be deemed an undeliverable distribution. Finally, the Debtor or the Reorganized Debtor, as applicable, or a distribution agent reserves the right to allocate all distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

9. *Time Bar to Cash Payments*. Checks issued on account of Allowed Claims shall be null and void if not negotiated within one hundred eighty (180) days after the date of issuance therein. Requests for reissuance of any check shall be made in writing directly to the Reorganized Debtor by the holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check shall be made in writing on or before the later of one hundred eighty (180) days after the Effective Date or ninety (90) days after the date of issuance of such check. After such date, all Claims in respect of void checks shall be discharged and forever barred and the distribution on account of such Claims shall be treated in accordance with Article VIII of this Plan.

10. *Foreign Currency Exchange Rates*. As of the Effective Date, any Claim asserted in currency(ies) other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the mid-range spot rate of exchange for the applicable currency as published in *The Wall Street Journal*, National Edition, the day after the Petition Date.

11. *Setoffs*. Except as otherwise provided herein, a Final Order of the Bankruptcy Court, or as agreed to by the holder of a Claim and the Debtor or Reorganized Debtor, as applicable, the Reorganized Debtor may, pursuant to section 553 of the Bankruptcy Code and applicable nonbankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Claim (before any distribution is made on account of such Claim), the claims, rights and Causes of Action of any nature that the Debtor or

the Reorganized Debtor, as applicable, may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claims, rights and Causes of Action that the Debtor or the Reorganized Debtor may possess against such holder.

12. *Claims Paid or Payable by Third Parties*. A Claim shall be reduced in full and such Claim shall be disallowed without a Claims objection having to be filed and without any further notice to, or action, order or approval of, the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtor or Reorganized Debtor. To the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtor or Reorganized Debtor, such holder shall repay, return or deliver any distribution held by or transferred to the holder to the Reorganized Debtor to the extent the holder's total recovery on account of such Claim from the third party and under this Plan exceeds the total amount of such Claim

13. *Special Rules for Distributions to Holders of Disputed Claims*. Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties, no partial payments or partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim, respectively, have been resolved by settlement or Final Order. In the event that there are Disputed Claims requiring adjudication and resolution, the Reorganized Debtor shall establish appropriate reserves for potential payment of such Claims.

14. *Interest on Claims and Equity Interests*. Except as specifically provided for in the Plan, no Claims, Allowed or otherwise (including Administrative Claims), shall be entitled, under any circumstances, to receive any interest on a Claim.

## C. Allocation of Consideration.

The aggregate consideration to be distributed to the holders of Allowed Claims in each Class under the Plan shall be treated as first satisfying an amount equal to the principal amount (as determined under U.S. federal income tax principles) of the Allowed Claim for such holders, and any remaining consideration as satisfying accrued, but unpaid interest, as applicable.

## D. Estimation.

Prior to or after the Effective Date, the Debtor or the Reorganized Debtor, as applicable, may (but are not required to), at any time, request that the Court estimate (i) any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code or (ii) any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, for any reason, regardless of whether the Debtor or the Reorganized Debtor has previously objected to such Claim or whether the Court has ruled on any such objection. The Court will retain jurisdiction to estimate any Claim at any time, including during proceedings concerning any objection to such Claim. In the event that the Court estimates any Claim, such estimated amount shall constitute either (i) the Allowed amount of such Claim, (ii) the amount on which a reserve is to be calculated for purposes of any reserve requirement under the Plan or (iii) a maximum limitation on such Claim,

as determined by the Court. If the estimated amount constitutes the maximum limitation on such Claim, the Debtor or the Reorganized Debtor, as the case may be, may elect to object to any ultimate allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another.

**E. <u>Insured Claims.</u>**

If any portion of an Allowed Claim is an insured Claim, no distributions under the Plan shall be made on account of such Allowed Claim until the holder of such Allowed Claim has exhausted all remedies with respect to any applicable insurance policies. To the extent that the Debtor's insurers agree to satisfy a Claim in whole or in part, then immediately upon such agreement, the portion of such Claim so satisfied may be expunged without an objection to such Claim having to be filed and without any further notice to or action, order or approval of the Court.

## ARTICLE IX.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction:

(i) to resolve any matters related to (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtor or the Reorganized Debtor is party or with respect to which the Debtor or the Reorganized Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; and (b) any dispute regarding whether a contract or lease is or was executory or expired;

(ii) to determine, adjudicate, or decide any other applications, adversary proceedings, contested matters, and any other matters pending on the Effective Date;

(iii) to ensure that distributions to holders of Allowed Claims and Equity Interests are accomplished as provided herein;

(iv) to resolve disputes as to the ownership of any Claim or Equity Interest;

(v) to allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Equity Interests;

(vi) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, reversed, modified, or vacated;

(vii) to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(viii) to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Court, including the Confirmation Order;

(ix) to hear and determine all applications for compensation and reimbursement of expenses of professionals under sections 330, 331, and 503(b) of the Bankruptcy Code;

(x) to hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan;

(xi) to hear and determine any issue for which the Plan requires a Final Order of the Court;

(xii) to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(xiii) to hear and determine disputes arising in connection with compensation and reimbursement of expenses of professionals for services rendered during the period commencing on the Petition Date through and including the Effective Date;

(xiv) to hear and determine any Causes of Action preserved under the Plan;

(xv) to hear and determine any matter regarding the existence, nature, and scope of the Debtor's discharge;

(xvi) to hear and determine any matter, case, controversy, suit, dispute, or Cause of Action (i) regarding the existence, nature, and scope of the discharge, releases, injunctions, and exculpation provided under the Plan, and (ii) enter such orders as may be necessary or appropriate to implement such discharge, releases, injunctions, exculpations, and other provisions;

(xvii) to enter a final decree closing the Chapter 11 Case;

(xviii) to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan;

(xix) to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(xx) to enforce all orders previously entered by the Court; and

(xxi) to hear any other matter not inconsistent with the Bankruptcy Code.

For the avoidance of doubt, the Court shall not retain exclusive jurisdiction with respect to the Reorganized Debtor Operational Documents.

## ARTICLE X.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A. Rejection of Executory Contracts and Unexpired Leases.**

Each Executory Contract and Unexpired Lease shall be deemed rejected, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code unless expressly provided otherwise in this Plan, the Confirmation Order, the Plan Supplement, or another filing in this Court. The Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described rejection pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

Claims arising out of the rejection of Executory Contracts or Unexpired Leases pursuant to this Plan must be filed and served pursuant to the procedures specified in the Bar Date Order, or another order of the Bankruptcy Court, no later than thirty (30) days after the Effective Date. Holders of any Claim not filed within such time will be forever barred from asserting such Claim. Unless otherwise ordered by the Bankruptcy Court or specified in this Plan, all Claims arising from the rejection of Executory Contracts and Unexpired Leases shall be treated as General Unsecured Claims under this Plan.

**B. Assumption of Executory Contracts and Unexpired Leases.**

The Plan Supplement will list each Executory Contract and Unexpired Lease that the Debtor intends to assume through this Plan. Any assumption of Executory Contracts and Unexpired Leases under this Plan may include the assignment of certain of such contracts to the Reorganized Debtor. The Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described assumptions and assignments pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

Except as otherwise provided herein or agreed to by the Debtor and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

**C. Cure Claims.**

At the election of the Debtor or the Reorganized Debtor, as applicable, any monetary defaults under each Executory Contract and Unexpired Lease to be assumed under the Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code in one of the

following ways: (i) payment of the Cure Claim in Cash on or as soon as reasonably practicable following the occurrence of (A) thirty (30) days after the determination of the Cure Claim, and (B) the Effective Date or such other date as may be set by the Court; or (ii) on such other terms as agreed to by the Debtor or the Reorganized Debtor and the non-Debtor counterparty to such Executory Contract or Unexpired Lease.

In the event of a dispute pertaining to assumption or assignment, the Cure Claim payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. No later than thirty (30) days after the Effective Date, to the extent not previously filed with the Court and served on affected counterparties, the Debtor shall provide for notices of proposed assumption and proposed cure amounts to be sent to applicable contract and lease counterparties, together with procedures for objecting thereto and resolution of disputes by the Court. Any objection by a contract or lease counterparty to a proposed assumption or related cure amount must be filed, served, and actually received by the Debtor fifteen (15) days from service of the applicable assumption notice. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or cure amount. Within thirty (30) days after service of any objection to the amount of the proposed Cure Claim the Reorganized Debtor shall: (a) resolve such objection, which resolution shall not require approval of the Bankruptcy Court; (b) schedule a hearing before the Bankruptcy Court to determine the proper Cure Amount; or (c) determine to reject the Executory Contract or Unexpired Lease, and provide notice thereof to the applicable non-Debtor party or parties

The only adequate assurance of future performance shall be the promise of the Reorganized Debtor to perform all obligations under any executory contract or unexpired lease under this Plan.

**ASSUMPTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE PURSUANT TO THE PLAN OR OTHERWISE SHALL RESULT IN THE FULL RELEASE AND SATISFACTION OF ANY CLAIMS OR DEFAULTS, WHETHER MONETARY OR NONMONETARY, INCLUDING DEFAULTS OF PROVISIONS RESTRICTING THE CHANGE IN CONTROL OR OWNERSHIP INTEREST COMPOSITION OR OTHER BANKRUPTCY-RELATED DEFAULTS, ARISING UNDER ANY ASSUMED EXECUTORY CONTRACT OR UNEXPIRED LEASE AT ANY TIME BEFORE THE DATE ANY OF THE DEBTOR OR THE REORGANIZED DEBTOR ASSUMES SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE. ANY PROOFS OF CLAIM FILED WITH RESPECT TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT HAS BEEN ASSUMED SHALL BE DEEMED DISALLOWED AND EXPUNGED, WITHOUT FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE COURT.**

### D. Reservation of Rights.

Nothing contained in the Plan shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a

contract or lease is or was executory or unexpired at the time of assumption, the Debtor or the Reorganized Debtor, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, in which case the deemed assumptions and rejections provided for in the Plan shall not apply to such contract or lease.

**E. Insurance Policies.**

Notwithstanding anything in this Plan to the contrary, all of the Debtor's insurance policies and any agreements, documents or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan. On the Effective Date, the Debtor shall be deemed to have assumed (and assigned, if necessary) all insurance policies and any agreements, documents, and instruments related thereto. Obligations arising under insurance policies assumed by the Debtor before the Effective Date shall be adequately protected in accordance with any order authorizing such assumption.

**F. Post-Petition Contracts and Leases.**

All contracts, agreements, and leases that were entered into by the Debtor or assumed by the Debtor after the Petition Date shall be deemed assigned to the Reorganized Debtor on the Effective Date to the extent necessary.

## ARTICLE XI.
## EFFECTIVENESS OF THE PLAN

**A. Conditions Precedent to Effectiveness.**

The Plan shall not become effective unless and until the Confirmation Date has occurred and the following conditions have been satisfied in full or waived in accordance with Article XI.B:

1. the Confirmation Order entered by the Court shall be in form and substance reasonably satisfactory to the Debtor and consistent with this Plan;

2. the Confirmation Order shall not have been stayed, modified, or vacated on appeal;

3. all definitive documents shall be in form and substance reasonably satisfactory to the Debtor;

4. all actions, documents, certificates, and agreements necessary to implement the Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable laws;

5. all authorizations, consents, and regulatory approvals required (if any) for the Plan's effectiveness shall have been obtained;

6. the Debtor shall have filed a notice of Effective Date with the Court.

**B. <u>Waiver of Conditions Precedent to Effectiveness.</u>**

The Debtor may waive conditions set forth in Article XI.A above at any time without leave of or order of the Court and without any formal action.

**C. <u>Effect of Failure of Conditions.</u>**

In the event that the Effective Date does not occur on or before August 1, 2016, the Court: (i) the Confirmation Order may be vacated, (ii) no distributions under the Plan shall be made; (iii) the Debtor and all holders of Claims and Equity Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (iv) the Debtor's obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained in the Plan shall constitute or be deemed a waiver, release, or discharge of any Claims or Equity Interests by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

**D. <u>Vacatur of Confirmation Order.</u>**

If a Final Order denying confirmation of the Plan is entered, or if the Confirmation Order is vacated, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall: (i) constitute a waiver, release, or discharge of any Claims or Equity Interests; (ii) prejudice in any manner the rights of the holder of any Claim or Equity Interest; (iii) prejudice in any manner any right, remedy, or claim of the Debtor; or (iv) be deemed an admission against interest by the Debtor.

**E. <u>Modification of the Plan.</u>**

Subject to the limitations contained in the Plan, (i) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and (ii) after entry of the Confirmation Order, the Debtor or the Reorganized Debtor, as the case may be, may, upon order of the Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code. Notwithstanding the foregoing, the Confirmation Order shall authorize the Debtor or the Reorganized Debtor, as the case may be, to make appropriate technical adjustments, remedy any defect or omission, or reconcile any inconsistencies in the Plan, the documents included in the Plan Supplement, any and all exhibits to the Plan, and/or the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided, however, that such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to the Plan.

**F. <u>Revocation, Withdrawal, or Non-Consummation.</u>**

1. *<u>Right to Revoke or Withdraw</u>*. The Debtor reserves the right to revoke or withdraw the Plan at any time before the Effective Date.

2. *<u>Effect of Withdrawal, Revocation, or Non-Consummation</u>*. If the Debtor revokes or withdraws the Plan prior to the Effective Date, or if the Confirmation Date or the

Effective Date does not occur, the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Equity Interest or Class of Claims or Equity Interests), the assumption or rejection of Executory Contracts, Unexpired Leases or benefit plans effected by the Plan, any release, exculpation, or indemnification provided for in the Plan, and any document or agreement executed pursuant to the Plan shall be null and void. In such event, nothing contained herein, and no acts taken in preparation for consummation of the Plan shall be deemed to constitute a waiver or release of any Claims by or against or Equity Interests in the Debtor or any other Person, to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor, or to constitute an admission of any sort by the Debtor or any other Person.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

### A. Immediate Binding Effect.

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor, and any and all holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor. The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

### B. Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Delaware (without reference to the conflicts of laws provisions thereof that would require or permit the application of the law of another jurisdiction) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specified.

### C. Filing or Execution of Additional Documents.

On or before the Effective Date or as soon thereafter as is practicable, the Debtor or the Reorganized Debtor shall (on terms materially consistent with the Plan) file with the Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### D. Term of Injunctions or Stays.

All injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**E. Exemption From Transfer Taxes.**

Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, all transfers of property pursuant hereto, including (i) the issuance, transfer, or exchange under the Plan of any securities, (ii) the making or assignment of any lease or sublease, or (iii) the making or delivery of any other instrument whatsoever, in furtherance of or in connection with the Plan, shall not be subject to any stamp, conveyance, mortgage, sales or use, real estate transfer, recording, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

**F. Plan Supplement.**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. Holders of Claims or Equity Interests may obtain a copy of the Plan Supplement upon written request to counsel to the Debtor. The Debtor reserves the right, in accordance with the terms hereof, to modify, amend, supplement, restate, or withdraw any part of the Plan Supplement after they are filed.

**G. Notices.**

All notices, requests, and demands hereunder to be effective shall be made in writing or by e-mail, and unless otherwise expressly provided herein, shall be deemed to have been duly given when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed. Each of such notices shall be addressed as follows:

1. *To the Debtors*: Morris, Nichols, Arsht and Tunnell LLP, 1201 North Market Street, Wilmington, Delaware 19899-1347, Facsimile: (302) 658-3989, Attn: Robert J. Dehney.

2. *To the U.S. Trustee*: (i) if by mail to: Office of The United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Tel.: (302) 573-6491, Fax: (302) 573-6497, Attn: Jane Leamy.

**H. Conflicts.**

The terms of the Plan shall govern in the event of any inconsistency between the Plan and the Disclosure Statement. In the event of any inconsistency with the Plan and the Confirmation Order, the Confirmation Order shall govern with respect to such inconsistency.

Dated: June 10, 2016

**PREMIUM TRANSPORTATION SERVICES, INC. DBA TOTAL TRANSPORTATION SERVICES, INC.**

By: */s/ Bassam Joumblat*
Name: Bassam Joumblat
Title: CFO